| 87 | 213 |
| 93 | 620 |

# Beck *v.* West & Co.

*Action for Breach of Special Contract of Employment.*

1. *Demurrer; when ruling on is revisable.*—Rulings on demurrer, shown only by the bill of exceptions, are not revisable on error or appeal.

2. *Construction of writings, by court, or by jury.*—When the contract sued on is evidenced only by the written correspondence of the parties, it is the duty of the court to construe the writings, and to instruct the jury as to their meaning and legal effect.

3. *Contract of employment as travelling salesman; damages for breach.* Under a contract by which defendants, tobacco merchants, employed plaintiff as a travelling salesman, agreeing to supply him with samples, to allow him as compensation one-half of the profits on sales effected by him, and to advance to him, by paying his drafts at the commencement of his work, $50 at the end of every two weeks, to be repaid out of his share of the profits, while he was to furnish his own outfit; on a breach by defendants, refusing to pay plaintiff's drafts, and instructing him to quit work before the expiration of the stipulated term, plaintiff is entitled to recover as damages, not only his share of the profits on sales perfected and consummated, but also on sales negotiated

[Beck v. West & Co.]

so far that it can be ascertained with certainty that they would be completed, and the extent or amount thereof; but mere expectations, doubtful offers, or other vague or indefinite assurances of intention to purchase, without expression of quantity or value, are speculative merely, and not recoverable; opinions as to what sales he could, or probably would have made, are also speculative and contingent; nor can he prove or recover for the cost of his horse and buggy, the value of his services per month, or the damages to his credit by being thus thrown out of employment.

APPEAL from the Circuit Court of Escambia.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Wilson Beck against J. P. West & Co., and was commenced by attachment, sued out on the 2d January, 1888, on the ground of the defendants' non-residence. The defendants were tobacco manufacturers and dealers, doing business in Lynchburg, Virginia, and had employed the defendant, who lived in or near Brewton, Alabama, to serve them as travelling salesman. The contract between the parties was negotiated by letters, several of which were read in evidence on the trial, as follows: On the 30th August, 1887, defendants wrote to plaintiff, acknowledging the receipt of a letter which was not produced, and saying in reply: "We think, if you will work regularly, you will no doubt be worth $50 and more per month; but we would prefer to pay you according to your work. We will give you half you can make, you paying your own expenses. Will furnish you samples, &c., and will give you a letter of credit, so you may draw $50 every two weeks, or $100 per month. If you will go to work, and travel two weeks, then draw for $50, and so on, every two weeks, will send you check to balance your half of profits at end of each month. You only furnish your expenses for first two weeks, then your letter of credit entitles you to draw $100 per month thereafter, in two drafts of $50 each every two weeks. Now, if you will work regularly, we will make above terms until end of year, and will continue same terms next year, or will estimate your work and pay you salary next year. If you accept, get ready for work at once, and write us by return mail, and we will furnish samples and letter of credit at once, and will comply strictly with this letter. . . The trade will no doubt be good now. Awaiting reply at once," &c. This letter seems to have miscarried in the mails, as shown by plaintiff's answer to it, which is dated September 13th, and in which, after alluding to the delay in its transmission, he said: "I will now say in reply, that I will try

[Beck v. West & Co.]

the tobacco business again, though I have said I would never again sell tobacco on commission; but, as I feel satisfied I can do well in the business, I will try it again.   So now I will make myself ready to go to work, and will be ready by the time you can get your samples here.   Please send a nice lot of samples," &c.   To this letter defendants replied, under date of September 16th, saying: "All right.   We are going to stand up to you, and will expect steady, square work on your part.   We send you, by to-day's express, a full line of samples, with list of cost and selling prices; but we do not mean to confine you to selling prices, allowing you to make prices according to lots and competition.   Spread yourself." The rest of the letter relates to the counties in which the plaintiff should begin business, and other details of the trade. The plaintiff's letter of credit from defendants, dated September 21st, 1887, was in these words: "This is to certify, that you are instructed to draw on us, for one hundred dollars per month, as follows: After you have worked for us regularly two weeks, draw for $50, and after two weeks more regular work for us draw for $50 more.   Good until January 1st, 1888."

Under the contract shown by these letters, plaintiff bought a horse and buggy, as he testified, and entered on the discharge of his duties, travelling through Butler, Covington, Conecuh and other counties, exhibiting his samples, soliciting orders from merchants, &c.; on October 24th he drew on defendants for $50, on November 9th for $25, and on November 14th for $25; and a few days afterwards, while at Hayneville, Lowndes county, he received from defendants the following letter: "Yours of 9th inst. just at hand, and we write at once, and will say to go home at once and wait until trade opens.   You are not doing anything, and why in the name of common sense do you keep travelling.   We wrote you before you left Brewton not to go yet, as you had made a trip and found the trade was not buying.   You did not start when you could have made sales.   Now go home, and when trade opens we will send you money to start, but can not promise you any money to throw away now."   To this letter plaintiff replied at once, denying defendants' right to make him discontinue his work, and notifying them that he should return home and hold himself subject to their orders according to the terms of the contract; and he testified that he did so.

The complaint set out the contract substantially as shown

[Beck v. West & Co.]

by these letters, alleged performance on plaintiff's part, and breaches thereof by defendants, as follows: (1) in failing and refusing to pay his said drafts; (2) in failing to pay him his commissions on the goods sold by him; (3) in discharging him and ordering him to quit work without legal cause or excuse. For these breaches the complaint claimed damages as follows: $500 "for loss of credit and reputation by reason of defendants' failure to cash plaintiff's said drafts;" $150, "for money laid out and expended by plaintiff for horse and buggy in preparing and fitting out for said business;" $500, "for loss of commissions on sales which plaintiff would have made if said defendants had complied with their said contract;" and $500 for the breaches generally. The judgment-entry recites that issue was joined on the plea of "*not guilty;*" but the bill of exceptions further states, that a demurrer was interposed and sustained to so much of the complaint as claimed $500 damages "for loss of commissions on sales which plaintiff would have made if defendants had complied with their contract;" and that plaintiff was permitted to amend his complaint "by claiming $150 damages for board of self and horse, and for his expenses while travelling in defendants' service; also, $150 for use of horse and buggy, and his commissions earned while in the service of defendants."

"Plaintiff offered to prove, during the progress of the trial, what he paid for his horse and buggy to equip himself for service under said contract;" also, "what amount of goods he would have sold for defendants by the 1st January, 1888, if they had cashed his drafts, and permitted him to continue to travel, and what his commissions on the same would have amounted to;" also, "how the orders of a travelling salesman of tobacco, on his second trip through the same territory, would compare in amount with his orders on his first trip;" also, "that he was out of employment, from November 16th, 1887, to January 1st, 1888, and also up to the time of the trial;" also, "what his time was worth, per month, from October 6th, 1887, to January 1st, 1888, and from that day to the trial;" also, "that on his trip through the counties named, in addition to the orders secured, he had made arrangements with certain merchants to place their orders for tobacco, cigars and snuff, through plaintiff, on defendants' house, on his second trip, in November and December, and offered to prove the names of such merchants, with the amounts of goods each one proposed to take, and what

his commissions on such proposed sales would have been;" also, "that the hire and use of his horse and buggy was worth $2.00 per day, the cost of board of himself and horse was over $1.50 per day, and that he paid out these amounts from the 6th October to about 20th November, when he reached home in Brewton." The court excluded each part of this evidence, on objection by defendants, and plaintiff duly excepted.

Under the rulings of the court, the plaintiff had a judgment on verdict for $45.44, from which he now appeals, assigning as error the several rulings above stated, with others.

JAMES M. DAVISON, and WATTS & SON, for appellant.

M. A. RABB, contra.

STONE, C. J.—This action was brought by Beck against West & Co., and claims damages, first, for unpaid commissions on sales made by Beck; and, second, for failing to supply him with expense money agreed to be supplied, and thereby preventing his performance of the contract, and throwing him out of employment. Other grievances are complained of, but we will show further on that they furnished no ground of recovery.

It is said in the bill of exceptions that there was a demurrer, and a ruling on it; but, inasmuch as this appears only in the bill of exceptions, we can not consider it.—3 Brick. Dig. 78, § 7; Ib. 705, § 82.

The contract, for an alleged breach of which this action was brought, appears to have been made entirely by correspondence. There is no testimony tending to show that the contracting parties ever had a personal interview. Terms were offered by West & Co., which were accepted without modification by Beck. It was the duty of the court to interpret those writings, and hence it became its duty, and not that of the jury, to determine what obligations the writings imposed on each of the contracting parties. We concur with the trial court, in holding that no contract was made which bound either party to its observance for a longer term than January 1, 1888. We hold further, that, up to that time, there was a binding contract, requiring West & Co. to give employment to Beck as their travelling salesman, and, in consideration thereof, binding Beck to serve them as a

travelling salesman for the same term. Beck's compensation was to be half the profits made on sales effected through his agency; but he was to pay his own expenses, and, with the exception of samples, he was to provide his own outfit. West & Co. were to furnish samples; and, to enable Beck to meet expenses until profits should be realized, they bound themselves to honor and cash his orders to be drawn on them, for fifty dollars for every two weeks he should have continuously worked for them in said business. These were not payments to Beck, but loans or advances to be made to him, to be repaid out of his share of the profits on the sales of merchandise he was expected to make. It is manifest that both parties contracted in the honest belief and expectation that Beck's share of the profits on the sales he would make, would at least equal fifty dollars for every two weeks; and they made no provision for the contingency that they might not reach that sum. Yet, West & Co. gave no guaranty as to the amount of the profits Beck should realize. This was left dependent on his success as a salesman. We hold that West & Co. bound themselves to give Beck employment as a travelling salesman until January 1, 1888, to furnish him samples, and to lend to, or advance for him fifty dollars for every two weeks he was actually engaged in such service. The contract confers no discretion in the performance of these stipulations. And the contract equally bound Beck to serve them as travelling salesman with energy and fidelity, to allow them to retain of his share of the profits until they reimbursed themselves for the loans or advances made to him; and if such share of the profits fell short of reimbursing them, then Beck would owe them the balance.

The interpretation we have given the contract places the parties in an embarrassing predicament, but it is chargeable, perhaps, to a want of foresight in framing it. It is not in our power to modify the terms they agreed on.

On the testimony found in this record, we are not able to affirm that plaintiff violated any term of his contract, while the testimony, if believed, shows that West & Co. broke their contract, by refusing to honor and pay Beck's drafts. What, then, are proper elements of damages, entitling him to a recovery?

He was clearly entitled to recover his share of the profits on sales made by him. So, if he had agreements for later sales, which he could have perfected during his term, he is

[Beck v. West & Co.]

equally entitled to his share of the profits. But, to fall within this class, the negotiations must have proceeded so far, as that it can be ascertained with certainty that the sale would be made, and the extent of it. Mere expectations, doubtful offers, or other vague or indefinite assurances of intention to purchase, without expression of quantity or value, must be classed as speculative, and hence not recoverable. Being thrown out of employment was also an element of damages, if it were not that no standard can be fixed for ascertaining its extent. Opinion as to what sales he could, or probably would have made, all fall within the category of the speculative, are contingent, and do not tend to show a right of recovery.—*Pollock v. Gantt*, 69 Ala. 373; *Brigham v. Carlisle*, 78 Ala. 243; *Higgins v. Mansfield*, 62 Ala. 267; *Culver v. Hill*, 68 Ala. 66; *Union Refining Co. v. Barton*, 77 Ala. 148; *Bell v. Reynolds*, 78 Ala. 511.

The cost of plaintiff's horse and buggy, the value of his services per month, and damage to his credit, were each and all irrelevant testimony, and properly ruled out.

Plaintiff, as a witness for himself, offered to testify, that "he had made arrangements with certain merchants to place their orders for tobacco, cigars and snuff, through plaintiff, on defendants' house, on his second round in November and December, and offered to prove the names of such merchants, with the amount of goods each one proposed to take, and what plaintiff's commission on such proposed sales would have been." This testimony he was not allowed to give. This was error. To constitute this a right of recovery, however, his proof must come up to the rule as to certainty, which we have declared above.

The charge, "that in no event can the plaintiff recover more than the amount of his commissions" on sales actually made and completed, was probably correct on the testimony that was before the jury. No data had been placed before them, on which they could have rendered a verdict for greater damages. If the testimony, which we have decided the court should have received, had been put in, and had shown a case for recovery under the rules we have declared, then the charge would have been erroneous.

Reversed and remanded.