[Civ. No. 790.    Second Appellate District.—March 21, 1911.]

PURITAS LAUNDRY COMPANY, a Corporation, Appellant, v. CHARLES E. GREEN, Respondent.

Contract Between Laundry Company and Owner of Driver's Route —Payment for Work—Liability of Driver for Collections— Guaranty.—Where a contract between a laundry company and the owner of a driver's route required the driver to make all collections for laundry intrusted to him for the laundry company, and to guarantee all accounts at the established prices, there is no privity between the laundry company and those who intrust their laundry to the driver, and the liability for payment for such work to the company is on the driver.

Id.—Compensation of Driver—Percentage on Gross Charges.—The fact that under the terms of the contract the driver, besides a fixed payment, is also entitled to a specified percentage on the gross amount of charges collected for the work done does not affect the interpretation of the contract as to his liability to the laundry company for payment for the laundry work intrusted to him.

Id.—Action by Laundry Company for Balance Due—Termination of Contract Without Excuse—Inability to Collect—Findings Unsupported.—In an action by the laundry company to recover the

balance due and uncollected by the driver, if it should appear that performance by the driver was prevented by the acts of the plaintiff, it would be a sufficient defense; yet it is held that findings that performance by the driver was so prevented, and that by reason thereof he was unable to collect the balance due and unpaid from those for whom laundry work had been done, are unsupported by the evidence as to either of the facts so found.

ID.—TERMINATION OF BOND—DUTY OF RENEWAL.—Where the defendant was by the contract required to give a bond for the faithful performance of his contract, in the sum of $500, which was about to expire, where the contract lays no duty upon the laundry company to furnish him a new bond for execution and he refused to give a new bond on that account, he thereby broke his contract.

ID.—ORGANIZATION OF RIVAL COMPANY — PROPER DISCHARGE OF CONTRACTOR.—Where the defendant engaged in the organization of a rival laundry company, and sought to take away customers from plaintiff's laundry, he thereby placed himself in direct antagonism to the interests of his employer, and was properly discharged from further service on that account.

ID.—RULE AS TO MASTER AND SERVANT.—When a servant becomes engaged in a business which necessarily renders him a competitor or rival of his master, no matter how much or how little time he devotes to it, he has an interest against his duty, and the master is not bound to retain him in his employment.

ID.—PROVISION OF CONTRACT TO RECOMPENSE DRIVER FOR CLAIMS FOR LOSSES DULY ESTABLISHED BY CUSTOMERS—EVIDENCE OF CUSTOM.—Where the contract provides for recompensing the driver for losses duly established by the customers, and the contract is silent as to the mode of establishing such losses, it was error for the court to refuse to allow evidence to show the prevailing custom with respect to investigation and allowance of claims for lost articles and damaged goods under such circumstances. In such case it will be presumed that the parties contracted with reference to the established usage in relation to such subject.

ID.—WRITTEN CONTRACT—ORAL MODIFICATION UNEXECUTED—RECOVERY NOT ALLOWED.—It was error to allow evidence of an oral agreement between the parties as to a modification of the contract giving an increased compensation to the defendant for work brought in from branch agencies, where such agreement as to the sum claimed was unexecuted, and no recovery could be had thereon.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Ward Chapman, and L. M. Chapman, for Appellant.

Isidore B. Dockweiler, for Respondent.

SHAW, J.—Action to recover a balance of $431.70, alleged to be due upon a contract. Judgment went for defendant, from which, and an order denying its motion for a new trial, plaintiff appeals.

Plaintiff was engaged in the laundry business and defendant was the recognized owner of what is known as a "driver's route," throughout which, with a horse and buggy owned by him, he engaged in collecting and delivering articles for laundering, and when the work was done returned and redelivered the same to the owners thereof. On February 21, 1906, the parties entered into a contract, which was to continue in force for two years from and after the fourteenth day of May, 1906, and which contract contained provisions as follows:

"1. Said party of the first part (the plaintiff) agrees to wash and launder in a first-class manner and to redeliver to said second party (the defendant) at the time and in the order and manner that all laundry work is generally handled, within three (3) days or less (Sundays excluded) after receiving the same, all articles delivered to said laundry by said second party during the life of this contract, at the regular schedule of prices for laundry work in this city.

"Said party of the first part agrees to pay said party of the second part the sum of $5 per week, on each Tuesday, and on the 15th of each month a further sum sufficient to make the total compensation for the previous month amount to 30 per cent of the gross charges made by the party of the first part for the laundry work furnished by the party of the second part during the previous month.

"2. Said first party agrees to recompense said second party for all claims duly made and established by patrons, on account of losses of or damage to articles delivered to be laundered, which occur while said articles are in the possession of said first party. . . .

"5. It is agreed that in case said second party ceases to do business with said first party, he shall settle in full within two weeks thereafter."

The said second party agrees: "1. To deliver to said party of the first part at its laundry, to be laundered, all articles col-

lected by him from his route, and to pay said first party for doing said laundry work, the regular established schedule of prices in this city, in the manner provided herein.

"2. To take said laundered articles and return the same to the owners thereof at regular times and promptly, after the same have been laundered.

"3. To collect charges for said laundry work and pay over to said first party all money collected three times per week, on each Tuesday, Thursday and Saturday; and also make regular accounting and settlement on the 15th of each month for all work done during the previous month, in the manner already provided herein. Said second party agrees to guarantee all accounts and to make all collections promptly.

"4. To conform to the regular schedule of prices established by said first party, for articles collected to be laundered, and in no way to deduct from or 'cut' said schedule of prices without the consent of said first party. But this shall not prohibit said second party from collecting laundry from local agents and paying them a commission upon the work which said agents deliver to said second party.

"5. The aforesaid sum of five dollars per week and a further amount equal to 30 per cent of the net amount of work delivered by said second party, shall be received and accepted by him as full compensation and profits for performing his part of the contract. . . .

"6. Upon beginning operations under this agreement said second party will cause to be executed and delivered to said first party, a bond in the sum of five hundred dollars ($500) conditioned for the faithful performance of the terms and conditions of this contract on the part of said second party."

It was further provided that operations should begin under the contract on May 14, 1906, and continue for a term of two years thereafter; and that said second party might sell and transfer his route and assign his contract, upon the condition that such purchaser and transferee should be satisfactory to the party of the first part.

The complaint alleged that defendant entered upon the performance of his contract and continued in the performance thereof until about the fourth day of August, 1907, when he was discharged for cause, and said contract terminated for good cause by plaintiff, at which time defendant was indebted

to plaintiff in the sum of $431.70, which, upon demand, he refused to pay. In his answer defendant admits the execution of the contract; denies that there is due from him to plaintiff thereunder any sum whatsoever; denies that said contract was terminated upon good cause. Alleges that he is entitled to the sum of $28.70 on account of extra commissions orally agreed upon between plaintiff and defendant after he entered the employ of said plaintiff under the provisions of said contract, which commissions, it is alleged, were to be payable for work collected by defendant from subagencies where the amount of such collections equaled the sum of $20 or more per week; alleges that he is entitled to the sum of $75.75 on account of moneys paid out by defendant in settlement of claims of patrons for losses or damages to articles delivered to said plaintiff to be laundered, and which losses and damages occurred while said articles were in the possession of plaintiff. Admits that he is charged with $431.70 upon the books of plaintiff, but that $218.55 of said sum is made up of amounts due but uncollected by him, the collection of which has been interfered with by plaintiff by reason of the termination of said contract.

The court found that defendant entered upon the performance of the contract herein set out, and continued in the performance thereof until about July 27, 1907, at which time he was discharged and said contract terminated without good, sufficient or legal cause, and at which time there was a balance unpaid to plaintiff, on account of laundry work done by it, of $431.70; that at said time there was due to defendant the sum of $28.70, additional commissions earned by him under an oral agreement made with the plaintiff providing for the payment of additional commissions, as set forth in his answer; that defendant has paid out in settlement of losses, as set forth in his answer, the sum of $75.75, for which he is entitled to credit; that there are outstanding accounts, other than those collected by defendant and upon which he is entitled to credit, in the sum of $206.70, which sum defendant has been unable to collect by reason of his discharge by plaintiff, and which sum the court found plaintiff did not use due diligence to collect.

As we construe the contract, it imposed upon defendant Green the primary obligation of paying plaintiff for the laun-

dry work done, recovery for which could only be defeated by
some affirmative defense.  By its terms, defendant agreed ''to
pay said first party for doing said laundry work the regular
established schedule of prices in this city, in the manner pro-
vided herein''; that is, to pay over to plaintiff on each Tues-
day, Thursday and Saturday all moneys collected at such
times, and ''also make regular accounting and settlement on
the 15th of each month for all work done during the previous
month,'' and to make all collections promptly and guarantee
all accounts.  It was further provided, in express terms, ''that
in case said second party ceases to do business with said first
party, he shall settle in full within two weeks thereafter.''
Considering the contract as a whole, we are clearly of the
opinion that there was no privity between the laundry com-
pany and those who intrusted their laundry to defendant for
the purpose of having the same laundered, but that the intent
of the parties was that plaintiff should look solely and alone
to defendant for all charges for all laundry work done by it
on laundry delivered by defendant, and that defendant should
pay therefor the prevailing schedule rates, and on the 15th of
each month he should make settlement in full for all work
done during the preceding month.  The fact that plaintiff was
required to pay defendant thirty per cent of this gross amount
in no wise affects the interpretation that should be placed
upon the latter's promise.  If performance was prevented by
the acts of plaintiff, such fact would constitute a sufficient
defense to recovery.  (Civ. Code, sec. 1511.)   While such de-
fense was not pleaded, the court found that plaintiff termin-
ated the contract without good, sufficient or legal cause
therefor, and that by reason thereof defendant had not been
able to collect the balance of $206.70, due and unpaid from
those for whom laundry work had been done.  In our opinion,
neither fact so found is supported by the evidence.  The con-
tract imposed upon defendant the duty of giving to plaintiff
an indemnity bond in the sum of $500, conditioned for the
faithful performance of the contract.  He gave a bond which
expired August 1, 1907, but some days before the expiration
thereof refused to renew the same, or give any bond as re-
quired by the terms of the contract.  Upon this point, defend-
ant testifies that, when told the bond was about to expire and
the company wanted a cash bond, ''I told him the bond was

good enough and that he could have it renewed. When he told me the bond was about to expire and that I would have to get a new one, I told him that was all he would get. I told him to renew that bond; I declined to do it myself. The company had done so before." The contract did not require plaintiff to furnish the bond. It also appears from defendant's own testimony that some time prior to the termination of the contract, defendant had actively engaged in organizing and launching a rival laundry company, known as the "Electric Laundry"; that defendant had access to the books of plaintiff and an acquaintance with plaintiff's employees; that he did solicit some of said employees to leave the employ of plaintiff and go to the Electric Laundry Company, in which defendant was one of the stockholders; that he intended to go there himself, hiring another man to drive his wagon, and that it was his intention to take his own work to said Electric Laundry; that he talked with a number of said employees and did "ask Mr. Wonderly (one of the drivers) to quit the employ of plaintiff and take his work to the Electric before he was discharged and while his contract was still in force"; that he discussed with many of the employees the advisability of leaving the employ of plaintiff. The evidence clearly shows that defendant had not only placed himself in an attitude hostile to plaintiff's interest, but that he had violated the implied obligations of the contract, in that he was actively engaged in efforts to induce the employees of plaintiff to leave and unite their interests with that of a rival company engaged in the same business, which defendant had been instrumental in organizing and wherein he had invested his own capital. "Manifestly, when a servant becomes engaged in a business which necessarily renders him a competitor, a rival of his master, no matter how much or how little time he devotes to it, he has an interest against his duty. It would be monstrous to hold that the master was bound to retain the servant in his employment after he has thus voluntarily put himself in an attitude hostile to his master's interests." (*Dieringer* v. *Meyer*, 42 Wis. 311, 24 Am. Rep. 415. See, also, Civ. Code, sec. 2000.) The evidence discloses that defendant made little or no effort to collect the outstanding amounts due from his patrons. He says he did not dun them or ask them for the money. "What money I collected I simply took it volun-

tarily, or whenever they asked me how much was the balance on the account I told them, and at the first of the month I issued each one of them a statement of just exactly what was outstanding.'' It clearly appears from his own testimony that he insisted that the duty of making the collections did not devolve upon him, but upon plaintiff. Not only did defendant make no genuine effort to collect the accounts, but there is nothing in the record tending to prove that by reason of any act of plaintiff he was prevented from making such collections.

The contract contains a provision to the effect that the laundry company agrees to recompense said second party for all claims duly made and established by patrons on account of losses or damage to articles delivered to be laundered which occur while said articles are in the possession of said first party. The court found that defendant had paid in settlement of losses under this provision the sum of $75.75. It does not appear that such claims were duly made and established, or made and established at all, by patrons. Defendant testified that he made settlements with customers for such losses. The contract is silent as to how such claims should be established, and it was sought by plaintiff to show the prevailing custom with respect to investigation and allowance of claims for lost articles and damaged goods under such circumstances. The court sustained an objection to such inquiry. This was error. Specific stipulations as to the manner of the establishment of claims being omitted in the contract, it will be presumed that the parties contracted with reference to the established usage in relation to such subject.

Over plaintiff's objection, defendant was allowed to show that the written contract was modified by an oral agreement wherein it is claimed that, instead of being allowed thirty per cent on the gross charges, he was to be allowed an additional two and one-half per cent, where work was brought in from branch agencies the items of which amounted to more than $20 per week. This was clearly error. The contract, being in writing, could only be modified or altered by a contract in writing, or an executed oral agreement. (Civ. Code, sec. 1698.) The alleged oral agreement as to the sum claimed was unexecuted, and hence no recovery thereon could be had.

Other alleged errors are assigned by appellant, but in view of the conclusion reached, we deem it unnecessary to consider them.

The judgment and order are reversed.

Allen, P. J., and James, J., concurred.