(113 So. 74)
PERFECTION MATTRESS & SPRING CO. v. DUPREE. (6 Div. 868.)

Supreme Court of Alabama. April 21, 1927.

Rehearing Denied June 2, 1927.

1. Contracts ⊜—10(1)—Action on "unilateral contract" by party not bound against party bound is not maintainable.

Where a contract is "unilateral," that is, binding on one party but not on the other, action for breach of the contract by the party who is not bound against the party who is bound is not maintainable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unilateral Contract.]

**2. Master and servant ⚷39(1)—Complaint for discharge showing salesman was to render services and employer to pay compensation showed mutuality of consideration.**

In salesman's action for wrongful discharge by employer, complaint alleging that salesman was employed as such for remainder of year, that he was to furnish automobile and to pay traveling expenses, that employer was to pay commission and allow drawing account to be credited against commissions, *held* to show mutuality as to consideration, obligation to render services for the year being implied.

**3. Contracts ⚷168—Express contract includes what is implied.**

What is implied in an express contract is as much a part of it as what is expressed.

**4. Pleading ⚷207—Demurrer must specifically present objection (Code 1923, § 9479).**

Unless point of objection is specifically presented by the demurrer, objection cannot be allowed under Code 1923, § 9479, providing that no objection can be allowed which is not distinctly stated in the demurrer.

**5. Master and servant ⚷30(1)—Servant may be discharged for engaging in competitive business, though he gives whole time to master's business, but not for planning such business after employment ends.**

Master has the right to discharge servant, if servant, without master's consent, engage in another business which tends to injure or endanger that of master, or prevents him from giving the time and attention which is due to the business of the master, or if servant engage in a business which renders him a competitor and rival of the business of the master, but master has no right to discharge servant for planning to engage in such business after his term of employment ends.

**6. Master and servant ⚷30(1)—Employee must not entice employees to leave during their term of employment, but negotiations as to employment thereafter are not forbidden.**

While an employee is obligated not to entice other employees to leave the master's employment during the existence of their contract of employment, negotiations between employees looking to their engaging in other pursuits after the expiration of the existing contract of employment are not forbidden.

**7. Master and servant ⚷39(1)—Plea alleging contemplated competitive business by employees held not to show justification for salesman's discharge, because failing to allege his knowledge.**

In salesman's action for wrongful discharge by employer, employer's plea alleging that salesman and other employees agreed to enter into a competitive business and that plaintiff or other such employee notified employer's customers of such contemplated business and that it would be able to supply their needs *held* insufficient to justify discharge, because failing to allege that salesman had knowledge of such conduct.

**8. Master and servant ⚷39(1)—Plea alleging contemplated competitive business prejudicial to employer held not to justify salesman's discharge, since failing to allege prejudice.**

In salesman's action for wrongful discharge by employer, employer's plea alleging that salesman and other employees entered an arrangement to engage in a competitive business, that salesman or other such employee notified employer's customers of contemplated business and that it would be able to supply their needs, under such circumstances and so often as to be prejudicial or likely to become prejudicial to employer, *held* insufficient to show justification for discharge, since not alleging that conduct was prejudicial except by way of conclusion.

**9. Master and servant ⚷39(1)—Plea alleging contemplated competitive business held insufficient to justify salesman's discharge, since not showing prejudice.**

In salesman's action for wrongful discharge by employer, employer's plea that salesman and others arranged among themselves to engage in a competitive business, and that salesman or other employee who entered into the arrangement notified some of employer's customers respecting contemplated business that it would be able to care for their needs, and did this under such circumstances and so often as to be prejudicial or likely to become prejudicial, *held* insufficient to show justification for discharge, since failing to show conduct was legally prejudicial.

**10. Master and servant ⚷39(1)—Plea alleging salesman after discharge entered competitive business held not to justify discharge.**

In salesman's action for wrongful discharge by employer, employer's plea that salesman and other employees arranged among themselves to enter into a competitive business and after discharge forthwith conducted such competitive business *held* insufficient to show justification for discharge, employee owing no duty not to do such things after discharge.

**11. Master and servant ⚷39(1)—Plea held insufficient to justify salesman's discharge because not showing attempt to induce other employees to leave during their term of employment.**

In salesman's action for wrongful discharge by employer, plea alleging salesman attempted to induce other employees to leave the service and to enter a rival business, without employer's consent, that employer notified salesman of such misconduct and discharged him *held* insufficient to show justification for discharge, because not showing salesman attempted to induce other employees to leave during their period of employment.

**12. Master and servant ⚷39(1)—Plea held insufficient to justify salesman's discharge because not averring organization to engage in competitive business during term of employment.**

In salesman's action for wrongful discharge by employer, plea alleging that salesman en-

---

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

gaged with other employees to organize a corporation to compete with employer, and subscribed for stock therein, without employer's consent, and that employer notified salesman of such misconduct and discharged him *held* insufficient to show justification for discharge in failing to aver that salesman organized corporation to engage in business during his term of employment.

**13. Discovery ☞38—Salesman suing for discharge was not entitled to interpose interrogatory before trial calling for statement of all sales.**

In salesman's action for wrongful discharge by employer, court erred in failing to sustain objection to salesman's interrogatory before trial, under statute, calling for a statement of all sales made in the territory formerly had by him, since salesman under his contract was entitled to commission on orders solicited by him and accepted by employer, whether sent in writing, by telephone, or in person only, and not on orders not solicited or obtained by him.

**14. Discovery ☞65—Employer sued for discharge of salesman did not waive objection to interrogatory before trial by answering before court ruled.**

Employer sued for wrongful discharge of salesman, which objected to salesman's interrogatory before trial, under statute, calling for statement of all sales made in his former territory, was not bound to delay answer to interrogatory until trial court ruled on objection or until case was ready for trial and thereby to subject itself to penalties for failure to answer in case objection was overruled, but might answer interrogatory before obtaining ruling without waiving objection.

Appeal from Circuit Court, Jefferson County; Joe C. Hail, Judge.

Action by George P. Dupree against the Perfection Mattress & Spring Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded.

Count 1, as amended, is as follows:

"Plaintiff claims of the defendant $5,000 as damages for the breach of an agreement entered into between the plaintiff and the defendant on, to wit, the 12th day of January, 1923, which agreement was in substance as, follows: The defendant employed the plaintiff as traveling salesman for the remainder of the year 1923. Plaintiff was to furnish his automobile in which to travel the territory assigned him by the defendant and to pay all of his own traveling expenses; the defendant was to pay the plaintiff 4 per cent. commission on all business received from customers solicited by the plaintiff in the territory so assigned him. Plaintiff was to be allowed a drawing account of $400 per month against the commissions, which was to be credited to his account monthly, and the balance of his account to be paid on July 1, 1923, and January 1, 1924.

"Plaintiff avers that he complied with his part of the agreement and performed his services up to and including the 31st day of October, 1923; that he was ready, willing, and able, and offered to perform his part of said agreement from October 31, 1923, up to and including the 31st day of December, 1924, but that on to wit, the 31st day of October, 1923, the defendant discharged the plaintiff and declined to allow the plaintiff to continue to perform his part of said agreement, although the plaintiff was ready, willing, able, and offered so to do, and the defendant failed or refused to pay the plaintiff any sum for the months of November and December, 1923, and failed or refused to pay the plaintiff any commission on any business received from customers from the territory assigned the plaintiff during said months, all to the plaintiff's damage in the sum aforesaid; wherefore this suit.

"Plaintiff avers that the agreement sued on and referred to in this count was in writing, and that during the months of November and December, 1923, defendant received a large amount of business from customers in the territory assigned to plaintiff in said agreement, on which business defendant has failed to pay plaintiff the agreed commission."

"And plaintiff claims interest on said sum from to wit, January 1, 1924."

Count 2 is based upon a contract in writing, and count 3 is upon an oral agreement.

Defendant's plea 2 is as follows:

"2. For further answer to the complaint defendant says that notwithstanding the facts alleged in the complaint, plaintiff ought not to recover of the defendant for that prior to the time that defendant is alleged to have discharged the plaintiff and while the plaintiff was in the employ of the defendant, the plaintiff attempted to induce one or more coemployees of the defendant to leave the service of the defendant and to enter into a rival business with that of the defendant; that such conduct by the plaintiff was without the defendant's consent and was done under such circumstances as to be prejudicial to the defendant's business, or was likely to become prejudicial, which conduct was unfaithful to the defendant as an employee of the defendant; and within a reasonable time after the discovery of such acts and conduct on the part of the plaintiff, defendant notified plaintiff of such misconduct and discharged him."

Plea 3 alleges, in substance, that plaintiff and other employees of defendant entered into an arrangement among themselves, which they kept secret from defendant, and by which they proposed to enter into a competitive business with defendant, etc.

Demurrer to these pleas was overruled.

Pleas 4 and 5 are as follows:

"4. For further plea to the complaint defendant says that prior to the time plaintiff was discharged by the defendant, plaintiff and other employees of the defendant entered into an arrangement among themselves which they kept secret from the defendant to engage in a business on or about January 1, 1924, which was to be competitive with defendant's business, and thereafter and without the defend-

ant's knowledge and in the promotion of the line and scope of arrangement between the plaintiff and such other employees of the defendant, the plaintiff or some other such employee of the defendant who had entered into said arrangement with the plaintiff and in the promotion of the contemplated business to be competitive with defendant's business, notified some of the defendant's customers of such contemplated business, and that after January 1, 1924, such business so to be organized would be able to supply the needs of such customers in defendant's line of business. And defendant says that such conduct was done under such circumstances and so often as to be prejudicial, or likely to become prejudicial, to the defendant, and within a reasonable time after ascertaining such facts, defendant discharged the plaintiff, as alleged in the complaint.

"5. For further plea to the complaint the defendant adopts all the allegations of plea No. 4, and in addition thereto alleges the following facts:

"And defendant alleges that such notice to defendant's customers as set forth in this plea was had and done with the plaintiff's consent."

Plea 6 alleges that prior to his discharge plaintiff and other employees of defendant entered into an arrangement among themselves, which they kept secret from defendant, to engage in business which was to be competitive with defendant's business, and without defendant's knowledge and after plaintiff was discharged plaintiff and such other employees who were also discharged for the same cause forthwith carried out such arrangement and conducted such competitive business during November and December, 1923, for compensation, during which time plaintiff is suing; that such conduct was done under such circumstances as to injure defendant's business or was likely to be prejudicial to defendant, and was unfaithful as an employee of defendant in the promotion of its business; and that within a reasonable time after learning such facts defendant discharged plaintiff.

Plea 7 is the same as plea 6, and adds an averment that after the arrangement alleged had been entered into plaintiff or some employee of defendant who had entered into such arrangement with plaintiff attempted to induce other employees of defendant to join in such competitive business and to leave the employment of defendant.

Plea 8 alleges that prior to the time defendant is alleged to have discharged plaintiff and while plaintiff was in the employ of the defendant, plaintiff attempted to induce one or more coemployees of defendant to leave the service of defendant and to enter a rival business with that of defendant, and that such conduct by plaintiff was without defendant's consent, and defendant notified plaintiff of such misconduct and discharged him.

Plea 9 alleges that prior to the time defendant is alleged to have discharged plaintiff and while plaintiff was in the employ of defendant, plaintiff engaged with other employees of defendant to organize another corporation to engage in business in competition with that of defendant, and subscribed for stock in said corporation, without defendant's consent, and that defendant notified plaintiff of such misconduct and discharged him.

Plaintiff's witness Ridout testified that in January, 1923, he was instructed by the president of defendant company to write a letter embodying the terms of the agreement of employment reached between defendant and plaintiff; that he wrote the letter the following October, which is as follows:

"January 12, 1923.

"Mr. Geo. P. Dupree, P. O. Box. 412, Birmingham, Alabama. Dear Mr. Dupree: We hereby confirm our verbal agreement of several days ago in regard to your contract for the year 1923 as follows:

"You are to furnish your own automobile in which to travel your territory and pay all of your own expenses.

"We will pay you 4 per cent. commission on all business received from such accounts as you solicit in your territory, whether mail, phone or personal orders, which are accepted and shipped by us.

"You will be allowed a drawing account of $400 per month against the above mentioned commissions, which are to be credited to your account monthly. The balance of your account, if any due by us or due us from you, is to be paid July 1, 1923, and January 1, 1924.

"We believe you will find this covers our agreement entirely; if not advise us immediately. Yours very truly, Perfection Mattress & Spring Co., Frank J. Ridout, Secretary. "FJR/S."

London, Yancey & Brower and Martin, Thompson, Foster & Turner, all of Birmingham, for appellant.

The contract, not being binding upon the plaintiff, is not binding upon the defendant. Jones v. Lanier, 198 Ala. 363, 73 So. 535; Moore Stave Co. v. Kennedy, 212 Ala. 193, 101 So. 894; McIntyre v. Jackson Lbr. Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Christie v. Patton, 148 Ala. 324, 42 So. 614; Pulliam v. Schimpf, 109 Ala. 179, 19 So. 428; Elmore v. Parrish, 170 Ala. 499, 54 So. 203. Where there is no promise made by the plaintiff, the promise of defendant is only binding to the extent that plaintiff has rendered service for the defendant. Sorrentino v. Bouchet (Sup.) 161 N. Y. S. 262; Owen Kelly v. Great Lakes Co., 203 Ill. App. 207. Any misconduct which is inconsistent with the relation of an employer and employee will justify the former in terminating the relation. Carpenter Steel Co. v. Norcross, (C. C. A.) 204 F. 537, Ann. Cas. 1916A, 1035; Darst v. Mathieson Alkali Wks. (C. C.) 81 F. 284; Singer v. McCormick, 4 Watts & S. (Pa.) 265; Frederick v. Ralli, 11 La. Ann. 425; Darden v. Nolan, 4 La. Ann. 374; Beckman v. Garrett, 66 Ohio St. 136, 64 N. E. 62; Bilz

v. Powell, 50 Colo. 482, 117 P. 344, 38 L. R. A. (N. S.) 847; In re Nagel (C. C. A.) 278 F. 109. If an employee attempts to induce coemployees to leave his employer's service and set up a rival business, it is such violation of his duty as warrants his immediate discharge. Ann. Cas. 1916A, 1033; Puritas Laundry v. Green, 15 Cal. App. 654, 115 P. 660; Hibbard v. Wood, 49 Pa. Super. Ct. 513; Union Ref. Co. v. Barton, 77 Ala. 154; Brown v. Dupuy (C. C. A.) 4 F. (2d) 367. Extent of sales made by plaintiff in the past was not competent as affording a guide for estimating future or prospective profits. Union Ref. Co. v. Barton, supra; Beck v. West, 87 Ala. 213, 6 So. 70; Id., 91 Ala. 312, 9 So. 199; Pollock v. Gantt, 69 Ala. 373, 44 Am. Rep. 519; Brigham v. Carlisle, 78 Ala. 243, 56 Am. Rep. 28; Higgins v. Mansfield, 62 Ala. 267; Culver v. Hill, 68 Ala. 66, 44 Am. Rep. 134; Bell v. Reynolds, 78 Ala. 511, 56 Am. Rep. 52. Speculative profits are not recoverable when they are based on uncertain contingencies. Young v. Cureton, 87 Ala. 727, 6 So. 352; Deslandes v. Scales, 187 Ala. 25, 65 So. 393; Bolling v. Tate, 65 Ala. 417, 39 Am. Rep. 5; Millican v. Haynes, 212 Ala. 537, 103 So. 567.

Horace C. Wilkinson, of Birmingham, for appellee.

No objection can be taken or allowed to pleading which is not distinctly stated in the demurrer. Code 1923, § 9479; Deslandes v. Scales, 187 Ala. 25, 65 So. 393; Creighton v. Air Nitrates Corp., 208 Ala. 330, 94 So. 356; Stoudemire v. Davis, 208 Ala. 495, 94 So. 498. The mere planning by an employee, during his contract of employment, to engage, after the expiration thereof, in a competing business, does not justify his discharge. Myers v. Roger J. Sullivan Co., 166 Mich. 193, 131 N. W. 521, 34 L. R. A. (N. S.) 1217; Levy v. Jarrett (Tex. Civ. App.) 198 S. W. 333; Greenburg v. S. D. Childs & Co., 147 Ill. App. 477. Mere acquiescence or silent consent, or simply permitting another to commit a wrong, does not charge one person with such other's wrong. Brannock v. Bouldin, 26 N. C. 61; Robinson v. Vaughton, 8 Car. & P. 252; Fitzwater v. Fassett, 199 Pa. 442, 49 A. 310. It is no defense to employee's action for wrongful discharge that subsequent thereto he engaged in business for himself in competition with his late employer. Stone v. Vimont, 7 Mo. App. 277; Litchtenhein v. Fisher, 87 Hun, 397, 34 N. Y. S. 304; Wilkinson v. Black, 80 Ala. 329. It is a jury question as to whether or not the conduct of plaintiff, by himself or in association with others, was such as to warrnt his discharge. Carpenter Steel Co. v. Norcross (C. C. A.) 204 F. 537, Ann. Cas. 1916A, 1035; Schumaker v. Heinemann, 99 Wis. 251, 74 N. W. 785; Clouston v. Carry, A. C. (Eng.) 122; Casavant v. Sherman, 213 Mass. 23, 99 N. E. 475.

Interrogatories propounded to the opposing party under the statute are evidence in the cause when offered by the party taking them. Code 1923, § 7768; Southern R. Co. v. Hayes, 183 Ala. 465, 62 So. 874. If a party fails to object to an interrogatory propounded to a witness by deposition, he waives the right to object to the competency of same for the first time on the trial of the case. Sparks v. J. S. Reeves & Co., 165 Ala. 352, 51 So. 574; L. & N. v. Hall, 91 Ala. 112, 8 So. 371, 24 Am. St. Rep. 863; Townsend v. Jeffries, 24 Ala. 329. A variance between pleading and proof cannot be raised for the first time by requesting the affirmative charge. Rules 34, 35, 4 Code 1923, pp. 906, 907; Aiken v. McMillan, 213 Ala. 494, 106 So. 150.

ANDERSON, C. J. [1-3] It is undoubtedly the law that a unilateral contract, that is, one which is binding on one party and not the other, will not authorize an action for the breach of same by the party not bound against the one that is. As we view the complaint in the instant case, and the contract set out, it shows a mutuality as to consideration—that is an employment by the defendant for the year for a compensation and an obligation on the part of the plaintiff to furnish his car and to repay the advances of his traveling expenses out of his commissions. And while there is no express obligation on the part of the plaintiff to continue in the service of the defendant for the year, there is an implied agreement to do so which would render the obligation reciprocal and mutual. "What is implied in an express contract is as much a part of it as what is expressed." Grossman v. Schenker, 206 N. Y. 466, 100 N. E. 39; 20 C. J. 1240, 6 R. C. L. 689.

[4-6] The contracts dealt with in Jones v. Lanier, 198 Ala. 363, 73 So. 535, Moore v. Kennedy, 212 Ala. 193, 101 So. 894, and other cases cited by appellant's counsel, are unlike the contract now under consideration. Moreover, the demurrers have been carefully examined, and the point contended for and above treated has not been specifically presented by any ground of demurrer.

"No demurrer in pleading can be allowed but to matter of substance, which the party demurring specifies; and no objection can be taken or allowed which is not distinctly stated in the demurrer." Code 1923, § 9479.

"The rule is well settled that if a servant, without the consent of the master, engages in another business which tends to injure or endanger that of the master or by reason of which he is unable to give the time and attention due the business of his employer, he may lawfully be discharged before the expiration of his term of service. * * *

"The court in Dieringer v. Meyer, 42 Wis. 311, 24 Am. Rep. 415, stated the rule and the reason therefor as follows: 'It is well settled that if a servant, without the consent of his master, engaged in any employment or business for himself or another, which may

tend to injure his master's trade or business, he may lawfully be discharged before the expiration of the agreed term of service. This is so because it is the duty of the servant, not only to give his time and attention to his master's business, but, by all lawful means at his command, to protect and advance his master's interests.'

"The courts are agreed that where the business undertaken by the servant is of a competitive nature, which tends to bring his personal interest in conflict with his duty to his master, with resultant injury to the master's business, he may lawfully be discharged before the expiration of his term of service. * * *

"'Manifestly, when a servant becomes engaged in a business which necessarily renders him a competitor and rival of his master, no matter how much or how little time and attention he devotes to it, he has an interest against his duty. It would be monstrous to hold that the master is bound to retain the servant in his employment after he has thus voluntarily put himself in an attitude hostile to his master's interests.' And the fact that he has given his entire time to the service of the master conducting his separate business through agents was held to be immaterial, the court further saying: 'The fact may be, in certain cases, that, notwithstanding the servant has engaged in a rival business, still he has given his whole time and attention to the business of his master. An attempt was made to show that this is such a case. But the existence of that fact will not take a case out of the rule above stated, for the reason that the servant would have an interest against his duty.'

"The reasons on which the rule is based were stated in Tozer v. Hutchison, 12 N. Bruns. 548, as follows: 'A person who enters into the service of another undertakes to bestow the same care, attention and diligence as if the business were his own. This the plaintiff could not do while he had an interest as partner in a business of the same description as that in which his employer was engaged. There would necessarily be a conflict between his duty and his interest. It was inconsistent with his duty as clerk to defendant and destructive of the confidence which must be reposed in a person employed as the plaintiff was, by enabling him to make use in his own business of the knowledge and information which he obtained as the confidential clerk and agent of the defendant.'

"In Puritas Laundry Co. v. Green, 15 Cal. App. 654, 115 P. 660, the evidence showed that while in the employ of a laundry company the servant assisted in organizing a rival company and was actively engaged in an effort to induce other employees to leave their present service and take service with the new company bringing what business they could with them. This the court held was a sufficient violation of his contract to justify his discharge. And so in Hibbard v. Wood, 49 Pa. Super. Ct. 513, wherein it appeared that a dairy foreman was engaged in the business of selling milk in the same community as his employer and solicited his employer's customers it was held that he might properly be discharged.

"However, the mere planning to engage in another business at the termination of his service, even though it is to establish a concern in competition with that of his master, is not such a breach of duty as to justify a servant's discharge. Myers v. Rogers J. Sullivan Co., 166 Mich. 193, 131 N. W. 521, 34 L. R. A. (N. S.) 1217, wherein it was said: 'We think that the mere planning by an employee during his contract of employment to engage after the expiration thereof in a competing business does not justify his discharge as a matter of law. * * * The complaint made by defendant is that by connecting himself with this corporation plaintiff put himself in an attitude of hostility towards defendant, and that of itself was sufficient cause for discharge. The facts are that the concern had not as yet entered into business, and did not propose to until the expiration of plaintiff's term of hiring. It amounted on the part of plaintiff to a mere planning for employment. One is entitled to seek other employment before he is on the street. The contrary would be a monstrous doctrine.' In Nichol v. Martyn, 2 Esp. (Eng.) 732, the court said on this subject: 'A servant while engaged in the service of his master, has no right to do any act which may injure his trade, or undermine his business; but every one has a right, if he can, to better his situation in the world; and if he does it by means not contrary to law, though the master may be eventually injured, it is damnum abs. injuria.'" Ann. Cas. 1916A, page 1032, and cases cited in note.

So, too, does an agent owe fidelity to his principal and is under a duty not to entice other employees to leave the employment pending their contract, but we know of no rule of law or conduct forbidding employees from negotiating between themselves looking to their future betterment by engaging in other pursuits after the expiration of their existing contract of employment.

[7, 8] Defendant's special plea 4, if not otherwise bad, does not charge the plaintiff with a knowledge of or consent to the conduct of other employees. Nor does it show, except by way of conclusion, that their conduct was prejudicial. It should show what they said or did prejudicial to defendant's business, as there is no averment that they solicited or persuaded the customers to withhold their patronage until their new business was established.

[9] True, plea 5 avers that the conduct of the other employees was known to the plaintiff, but it was demurrable for failing to show how or in what manner their conduct was legally prejudicial to the defendant.

[10] Pleas 6 and 7, if not otherwise bad, seek to set up the conduct of the plaintiff and his associates after they had been discharged and at a time when they did not owe the defendant the duty to not do the things charged.

[11] Plea 8, if not otherwise bad, fails to aver that plaintiff attempted to induce other employees to abandon the service of the defendant pending their period of employment. From aught appearing, plaintiff merely attempted to induce them to join him in busi-

ness after the expiration of their term of employment.

[12, 13] Plea 9, if not otherwise bad, fails to aver that plaintiff organized a competing corporation to engage in business during his term of employment.

"In the case of Beck v. West & Co. [87 Ala. 213, 6 So. 70], the Supreme Court through Stone, C. J., says a traveling sales-man cannot recover, in an action against his employer for a breach of the contract, any sum on estimated profits on sales to be made in the future which had not already been contracted to be made at the time of the breach of the contract, for, 'as to what sales he could or would have made, all fall in the category of the speculative, are contingent, and do not tend to show a right of recovery.' Beck v. West & Co., 87 Ala. 213, 6 So. 70. In Railway Co. v. Coleman, 153 Ala. 266, 44 So. 837, the court says: 'The damages claimed may be the ordinary and natural, and even necessary result of the breach; and yet, if in their nature uncertain, they must be rejected. * * * The profits which were merely possible or probable of accretion from the business in which the defendant was engaged were in large measure speculative, subject to contingencies, and incapable of being proved with the degree of certainty which the law requires to constitute recoverable damages.'" St. Louis R. R. v. Lilly, 1 Ala. App. 323, 55 So. 937.

It would therefore seem that the trial court erred in not sustaining the defendant's objection to plaintiff's interrogatory, under the statute, calling for a statement of all sales made by the defendant for the months of November and December in that territory formerly traveled by the plaintiff. On the other hand, should we concede, but which we do not decide, that the sales made through the plaintiff's successor could be taken as some evidence that plaintiff would have made similar sales, the question would still be objectionable, as it is not confined to sales made through the solicitation of said salesmen, but is broad enough to cover all sales made by the defendant, whether through the solicitation or influence of the salesman or not. We cannot concur in the insistence of appellee's counsel that the contract is broad enough to cover all sales made in plaintiff's territory whether through his efforts or solicitation or the solicitation of another salesman or directly by the defendant. We think the contract means that the plaintiff was to receive a commission on all orders solicited by him and accepted by the defendant, whether sent in by him in writing, by telephone or in person and does not apply to orders that may be sent in direct by purchasers which were not solicited or obtained by the plaintiff. This also seems to be the construction of the contract of plaintiff's counsel in framing the complaint, as each count avers "the defendant was to pay the plaintiff four per cent. commission on all business received from customers solicited by the plaintiff in the territory assigned to him."

[14] Nor can we hold that the objection to the interrogatory is not available to the defendant because it proceeded to answer same before getting a ruling on the objection. The objection was made before the interrogatory was answered, and we cannot say that the defendant waived the objection by answering the interrogatory instead of waiting until the case was ready for trial or until the trial court ruled on the objection and thus subjecting itself to be penalized for a failure to answer in case the trial court overruled the objection.

The first count, as amended, avers that the parties entered into a written contract on the 12th of January, and the proof shows that while the agreement was reached in January, it was not put in writing until the following October. This was a variance and entitled the defendant to the general charge as to count 1 if the variance was properly brought to the attention of the trial court, but which was not done. Circuit court rule 34.

For the error pointed out the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

SOMERVILLE, THOMAS, and BROWN, JJ., concur.