PIONEER OIL & GAS CO. *v.* ANDERSON *et al.*

(Division A. Nov. 20, 1933. Suggestion of Error Overruled Jan. 15, 1934.)

[151 So. 161. No. 30554.]

J. Morgan Stevens, J. M. Stevens, Jr., Powell, Harper & Jiggitts, all of Jackson, for appellant.

W. A. Shipman, of Jackson, for appellant.

S. D. Redmond, of Jackson, for appellant.

**Howie & Howie,** of Jackson, for appellees.

Argued orally by **Louis M. Jiggitts** and **J. Morgan Stevens, Sr.,** for appellant, and by **Virgil Howie** and **Joe Howie,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Pioneer Oil & Gas Company, a corporation, exhibited its bill in the chancery court of Rankin county against appellee M. E. Anderson, seeking to have the court decree to it title to the Burr-Brown oil and gas lease and the Casey-Wellon's oil and gas lease, purchased by Anderson, in his own name, at a time when he was secretary-treasurer, director, and a member of the executive committee of the appellant company.

The bill charges, in effect, that he fraudulently, and in bad faith, acquired an interest in these leases at a time when he was under duty to secure the leases for the corporation, and under instruction so to do from the board of directors of appellant corporation; that the corporation had an expectancy in these leases and desired to acquire them; and that the action of Anderson in acquiring

these leases was a fraud upon the rights of the corporation of which he was an official.

The bill prayed that the court order that an accounting be had, that a discovery be made by Anderson as to the cost of the wells to him, and that complainant be decreed to have slightly in excess of fifty-two per cent. interest in the above-entitled gas wells and leases; and it offered to pay the amount ascertained to be due.

The appellee Anderson denied, in his answer, that he was under any duty to acquire title to the said leases, and set up that he expended slightly in excess of fourteen thousand dollars in bringing in the gas wells on the above-named leases, and denied specifically that the corporation had instructed him to obtain the leases for it, or that he was under any duty so to do.

The court below found that the allegations of the bill had not been sustained by the evidence, and finally dismissed the bill, from which decree the appellant corporation, Pioneer Oil & Gas Company, prosecutes an appeal here.

The facts of each case, such as presented here, must determine the decision thereof, and it would be difficult indeed to lay down a hard and fast rule applicable to any particular case which may arise as to dealings of its officials with corporations.

It appears from the evidence offered by the appellant company that Dr. S. D. Redmond was the president thereof, and that he and his family owned the controlling interest in the corporation. He was also its attorney and, in a large measure, was able to determine the policy of the company. The evidence of Redmond and his witnesses tended to support the allegations of the bill that Anderson had, in bad faith with the corporation, acquired an interest in what is called the Hanna lease, which Redmond says is the bone of contention of the whole controversy.

The evidence of Anderson, largely supported by the minutes of the corporation kept by him, and attacked by the appellant's witnesses as being incorrect, tended to show that no instructions had been given him to secure the leases, and that he had not been so engaged. The evidence tended to show further that it was not the policy of the corporation to acquire less than a seven-eighths interest in any enterprise looking to the drilling for oil and gas.

There was evidence tending to show that the appellant company could not secure money with which to operate except upon the indorsement of individual members of the corporation; and that it was not paying its bills, and that it had but a small amount of cash on deposit in bank or otherwise available, liquid securities. It seems to be quite certain that Anderson had, in virtue of a partnership formed with Orr, a driller, spent considerable money ''in bringing in'' two wells, and that considerable risk was involved in spending large sums of money; that there was a misfortune in drilling one well, which made the cost unusual. Anderson, in his testimony, said, with reference to the Hanna lease, that it was practically given to him by Orr after they had formed a partnership to drill the two wells on the community leases, and that at the time the drilling was begun and the partnership formed, the Hanna lease was not a consideration, but was thrown in for good measure by Orr, in order to recoup the excessive cost of the first gas well brought in.

Appellant offered to do equity, but after Anderson had made a discovery as to the costs of the wells, there was no effort made to pay the amount, and the court was well warranted in believing that the appellant company was not at that time in a financial position to do so.

It is not contended that any money of the corporation had been used by Anderson, but that he knew Redmond was undertaking to secure the Hanna lease. Anderson

denied that he knew of the negotiations, but in fact there had been negotiations which had been abruptly terminated. Orr testified that he would not have dealt with Redmond, because the other members of the community leases objected to Redmond and his corporation having an interest therein.

The applicable principles of law governing the decision of this case, and applied by the chancellor, may be thus stated: That a director, a secretary-treasurer, or other governing members of a corporation, are to an extent agents and quasi trustees of a corporation, and are subject in their dealings respecting corporate interests to the general rules which apply to persons standing in a fiduciary relation and which forbid that such corporate officials be allowed to secure to themselves in advantage which good faith and fidelity to the trust reposed in them would require that they fairly represent that interest. It is a breach of their fiduciary obligations which equity will not tolerate for such officers, in antagonism to the corporate interest, to oust the corporation from beneficial property rights which ought to be preserved to it by acquiring the property themselves. When such derelictions or breaches of duty occur, they are treated as a fraud on the corporation out of which equity will protect the corporate interest as against the unfaithful corporate officials. 3 Pom. Eq. Jur. sec. 959.

In 14a C. J., p. 116, sec. 1883, we find the following statement which we approve: "Whether in any case an officer of a corporation is in duty bound to purchase property for the corporation, or to refrain from purchasing property for himself, depends upon whether the corporation has an interest, actual or in expectancy, in the property, or whether the purchase of the property by the officer or director may hinder or defeat the plans and purposes of the corporation in the carrying on, or development of the legitimate business for which it was

created. The rule that one may not purchase and hold as his own property which he is in duty bound to purchase for another applies to officers and directors of a corporation. Where they do so, they will be deemed to hold the title in trust for the corporation. They are liable to account for rents and profits, and are not entitled to reimbursement for improper expenditures."

As to an official of a corporation charged with duties in respect to the operation of its business, we find the statement at page 121, 14a C. J.: "When acting in good faith, a director or officer is not precluded from engaging in distinct enterprises of the same general class of business as the corporation is engaged in; but he may not enter into an opposition business of such a nature as to cripple or injure the corporation. After the corporation has refused or failed to obtain a contract with a third person he is not precluded from contracting in his own behalf with such third person; and after a contract with a third person is set aside over the protest of the corporation, it is not damaged by the wrongful act of the officer or director in taking it in his own name. . . . But directors, while ostensibly acting for the company, are not at liberty to divert in their own favor business which should properly belong to the company which they represent; and where they take a contract in their own name under such circumstances, they are trustees thereof, and accountable to the company for the profits which they make out of the transaction. It is no breach of the fiduciary obligation of an officer or director to take security for a personal debt due him from one who is also indebted to the corporation."

We do not believe it would be profitable to the bench and bar to set forth the mass of testimony delivered by Redmond, Anderson, and the other witnesses in the case. We think it is sufficient to say that a definite issue of fact was presented on three propositions: (1) Whether or not, in acquiring these leases, Anderson acted in good

faith; (2) whether or not the corporation could in any event have acquired the leases in controversy; (3) there is no dispute in the evidence that it was the policy of the appellant company not to acquire less than a seven-eighths interest in an enterprise. On all these propositions there was a square conflict, to put it most strongly, for the appellant, and we cannot say that the chancellor was manifestly wrong; in fact, we are of opinion that he correctly solved the facts.

The mere fact that a plaintiff corporation was negotiating for the purchase of certain property did not give it such an interest and expectancy therein as would render a purchase thereof by its president and secretary a breach of their fiduciary obligation amounting to a fraud. See Lagarde et al. v. Anniston Lime & Stone Co., 126 Ala. 496, 28 So. 199; also compare Greer v. Stannard, 85 Mont. 78, 277 Pac. 622, 64 A. L. R. 772, and annotations thereto.

Because Redmond had negotiated for the Hanna lease, it seems to be argued that he had acquired for the corporation an expectancy therein. But this does not follow. It was a mere hope or desire which had terminated unfavorably to Redmond's ambition. The appellant has cited many authorities, in all of which an unfaithful director operated to the detriment of his corporation with the means, men, and information acquired by it exclusively; but this is not the case here. We might add that Anderson was not a salaried employee of the corporation, although there was an effort to show that he was to receive certain stock for services, and after this controversy, Redmond undertook to place certain stock in the corporation in Anderson's name.

We are of opinion that the right result has been reached by the court.

Affirmed,