64 So.2d 808

## McKINSTRY et al. v. THOMAS et al.
### 6 Div. 477.

Supreme Court of Alabama.
April 30, 1953.
(Effective Nov. 28, 1952).

Irvine C. Porter and Gibson & Gibson, all of Birmingham, for appellants.

Wilkinson & Skinner, Birmingham, for appellees.

694

## PER CURIAM.

The question on this appeal is the sufficiency of a bill in equity to withstand the attack made on it by demurrer.

The bill was filed by appellees as complainants on May 30, 1952. The respondents are the Alabama Pine Company, a partnership composed of Thomas S. McKinstry and his two sons, Jerome D. McKinstry and W. D. McKinstry. The suit is also against said persons individually and against Mrs. Jessie D. McKinstry, the wife of respondent Thomas S. McKinstry, who had been a partner in the business of Alabama Pine Company, but had ceased to be such a partner since January 1946.

. The chief equity of the bill is the establishment of a constructive trust on the property and business of Alabama Pine Company and also on certain undescribed property of the other respondents, into which it is vaguely alleged that said assets of Alabama Pine Company, upon which the trust sought to be established, had been invested, and for a personal judgment against all the respondents. A discovery is sought to ascertain the facts as to the investment of said property of Alabama Pine Company.

Allenson J. Gray died in 1931. Before his death he had created and operated an extensive business, known as the Jefferson Lumber Company. He left as his descendants and heirs only a widow and one daughter, a minor, the complainants here. They knew nothing about business management. After the death of Mr. Gray in 1931, James N. Merrill, an uncle of Mrs. Gray, was appointed administrator of his estate on May 29, 1931. The circuit court, in equity, entered a decree authorizing the continued operation of the business, and appointed trustees to operate it. They operated it until January 28, 1935, when

the trustees petitioned the court to discharge them as such, and filed an account for settlement. The court approved the account and settlement and discharged those trustees and appointed complainant Mrs. Rose Lee Gray (Thomas) as guardian of complainant Carol Gray (Balog).

On February 6, 1935, the business was incorporated under the same name as Jefferson Lumber Company with seven hundred and fifty shares of stock. Mrs. Gray and Carol Gray were the stockholders, each having three hundred and seventy-five shares, less three shares held by members of the family and friends for convenience, including E. E. Evins, who had been one of the trustees. Mr. Evins was made president and general manager from the date of said incorporation until June 17, 1936. He resigned on June 26, 1936. On that day T. S. McKinstry, a respondent in this suit, was elected president, general manager and a member of the board of directors. The management and control of the corporation were turned over to him completely.

The bill further alleges that T. S. McKinstry had been associated with Mr. Gray before he died as a trusted and well paid employee, being paid a salary of $10,000 a year. That complainants had great confidence and trust in him. He was an experienced lumberman and had demonstrated that he was capable of successfully operating said business. That he told complainant, now Mrs. Thomas, prior to his election as stated above, that he would operate the business for her benefit and that of her daughter; and that she trusted him and had full confidence in him. That he operated the business as its president and general manager from June 26, 1936 until October 30, 1940, when it became apparent that the business would make a substantial profit that year, which turned out to be $23,275.37.

The bill then alleges that in operating the Jefferson Lumber Company, Mr. Gray had maintained his principal office in Birmingham where he conducted a sales agency to carry on the business of a lumber broker. He also had a manufacturing operation at Hanceville where he manufactured lumber, and another of a similar sort at Alabama City. (The Alabama City plant was disposed of in 1939, and the Hanceville plant in 1944.)

On October 30, 1940 said T. S. McKinstry formed a partnership, in which his wife and two sons, Jerome D. McKinstry and W. D. McKinstry, joined him, calling the partnership Alabama Pine Company, and was for the purpose of competing with the Jefferson Lumber Company which was under his management. That T. S. McKinstry, with the assistance of his said sons, has operated said partnership business continuously since that time for said purpose. Said partnership conducted its business of a sales agency as a lumber broker. For the years 1940 and 1941, said T. S. McKinstry for the Alabama Pine Company used the office of the Jefferson Lumber Company, and all the expenses of the operation of the partnership were paid out of the Jefferson Lumber Company's funds. That his two sons, respondents here, were employed by the Jefferson Lumber Company, acting through said T. S. McKinstry, and so was his wife, Mrs. Jessie D. McKinstry, until about May 1942. The sons were so employed until the corporation was dissolved June 30, 1946. That during the period from January 1, 1941 through June 30, 1946, the said T. S. McKinstry, his wife and two sons received from the Jefferson Lumber Company $101,595, and they also received profits from the Alabama Pine Company of $470,226.52.; and that during that time these complainants, owning all the stock of Jefferson Lumber Company, were paid $26,519.99 in salaries and withdrawals, but that no dividends were paid on their stock during said period.

The bill further alleges that the said McKinstry never disclosed to the complainants that the Alabama Pine Company was competing with the Jefferson Lumber Company or that he would divert customers from the Jefferson Lumber Company to the Alabama Pine Company, and they never knew of such conduct until the 31st day of December 1951; and that said conduct and course of dealing was never authorized or approved by the directors of the Jefferson

Lumber Company or by the complainants. It is then alleged that the Jefferson Lumber Company under the management of McKinstry earned materially less each year from 1941 to 1945. That in 1941 it earned, to wit, $29,567.23, and substantially less each year until 1945 when there was a loss of $13,550. Whereas, during that time Alabama Pine Company was earning substantially more than Jefferson Lumber Company, and in 1945 instead of a loss it earned $18,823, and that in 1946 under said management of McKinstry the Jefferson Lumber Company lost $4,416, and in the same year the Alabama Pine Company under McKinstry made a net profit of $72,000. Substantially all of that profit was the result of the efforts of McKinstry while he served as general manager of the Jefferson Lumber Company, and in its exclusive charge and control, and that for the years 1947–1951, the Alabama Pine Company made a large profit each year— the figures being given in the bill—all of which was earned under said management. During said time the Jefferson Lumber Company was not operating, having liquidated June 30, 1946 at the suggestion of McKinstry. That for several years before its dissolution, McKinstry repeatedly advised the complainants to dissolve the Jefferson Lumber Company and discontinue its operation, to which they finally yielded on account of their confidence in McKinstry. That upon the dissolution of the corporation complainants received the capital they had invested in it or its equivalent.

By an amendment filed July 25, 1952, complainants allege that during said period from January 1, 1941 through June 30, 1946, McKinstry, his wife and two sons invested large sums of money, which they obtained from Alabama Pine Company, in real and personal property, which is now held by them, and that said property represents the moneys paid over to them by the Alabama Pine Company derived from the real and personal property which in equity and good conscience is the property of the complainants. They seek a discovery of it.

The prayer of the original bill is that upon final hearing the court adjudge and decree that Alabama Pine Company, Thomas S. McKinstry, his two sons Jerome D. and W. D. McKinstry, and Mrs. Jessie D. McKinstry are each indebted to the complainants in the sum of $571,821.52 with interest, and in addition that they be required to pay complainants a sum equal to the profits that had been earned by the Alabama Pine Company subsequent to December 1, 1951 up to the date of the final decree and, further, that the court adjudge and decree that the business, property and assets of the partnership known as the Alabama Pine Company is the property of the complainants, and that the title to all the property and assets of the Alabama Pine Company be divested out of respondents. and be vested in complainants. Complainants offer to do equity. The prayer added by the first amendment is for a decree that the real and personal property acquired by the individual respondents since the organization of Alabama Pine Company was acquired with the funds of said partnership, which in equity and good conscience belong to the complainants, and that the title to the same be divested out of them and invested in the complainants. A second amendment to the bill was filed August 7, 1952, and repeats the averments that the shares of stock issued to the other stockholders in the Jefferson Lumber Company, other than complainants, were issued to them for the convenience of Mrs. Gray (Thomas), as she paid for said shares of stock and they were transferred and surrendered to her before the corporation was dissolved on June 30, 1946. The amendment has attached a copy of the minutes. of the meeting of the stockholders of Jefferson Lumber Company on said day, and it further alleged that when said corporation was dissolved these complainants. owned all the capital stock of said corporation and that there were no creditors— all having been paid in full.

Demurrers were filed to the bill as originally filed and as amended. The demurrers to the bill as originally filed are addressed to the bill and each and every paragraph, aspect, phase or part thereof severally and separately. The demurrers addressed to the bill as amended are

addressed substantially the same way, except to that filed on August 7, 1952. It was also addressed to that aspect of the bill as last amended seeking a discovery. There was only one decree on the demurrers, and was dated August 29, 1952, reciting:

"This cause coming on to be heard was submitted for decree on the demurrer of respondents to the bill of complaint as last amended;

"And upon consideration it is held that said demurrer is not well taken. It is therefore ordered, adjudged and decreed by the court, that said demurrer be and the same is hereby overruled to the bill of complaint as last amended as a whole and to each and every aspect thereof, separately and severally, and respondents are allowed twenty days from this date in which to answer."

On September 17, 1952, an instrument was filed styled security for costs of appeal, which recites:

"We, the undersigned, jointly and severally, hereby acknowledge ourselves security for all costs of appeal to the Supreme Court of Alabama, from the decree rendered in the above entitled cause on the 29th day of August, 1952, and hereby agree to pay all such costs. * * *

 (Signed) Alabama Pine Co.
 By T. S. McKinstry,
 A Partner.
 White E. Gibson,
 T. S. McKinstry,
 Irvine C. Porter."

The assignments of error relate to the demurrer and the ruling on it as if the demurrer were addressed properly to each aspect and as if the decree responded to a demurrer in that form.

It is also pointed out that the security for costs does not make declaration as to who is taking the appeal. There is no other recital in the record as to who is appealing except the citation of appeal and the certificate of the register to the transcript.

The citation of appeal says that the respondents took an appeal in the case of Mrs. Rose Lee Gray Thomas, et al., complainants, versus Thomas S. McKinstry, et al., respondents. The certificate of the register to the transcript states that "the respondents, Alabama Pine Company, a partnership, et al., in a cause pending in said court wherein Rose Lee Gray Thomas and Carol Gray Balog are complainants, and Alabama Pine Company, a partnership, et al., respondents, have taken an appeal from the decree of said court rendered on to-wit: August 29, 1952, to the Supreme Court of Alabama." The assignments of error recite that they are by "the appellants separately and severally in the above styled cause," without naming them otherwise.

Appellees insist that the record therefore shows that only the Alabama Pine Company, a partnership, has taken the appeal.

■ There is no motion to dismiss the appeal for the failure to comply with section 804, Title 7, Code. If that statute applies and was not observed, it would be necessary to dismiss the appeal *ex mero motu.* Sherrod v. McGruder, 209 Ala. 260, 96 So. 78. But the appeal bond need not be signed by the parties appellant. All that is necessary is security for the costs. Sections 766, 792, Title 7, Code; Mayfield v. Court of County Com'rs, 148 Ala. 548, 41 So. 932; Mancill v. Thomas, 216 Ala. 623, 114 So. 223; Clary v. Cassels, Ala. Sup., 61 So.2d 692(4).[1] Since the citation of appeal and certificate of the register both state that the respondents took the appeal, and there is nothing in the record to the contrary, we think we should so treat the situation as having that meaning. It is different from Herren v. Shelnutt, 21 Ala.App. 589, 110 So. 697; certiorari denied, 215 Ala. 355, 110 So. 699. In that case the appeal bond recited the name of appellant, and the citation and certificate of the clerk to a different effect yielded to the recital of the bond.

■ We understand the equity of the bill to be a reliance upon the claim that T.

---

1. Ante, p. 183.

698

S. McKinstry breached a duty which he owed to Jefferson Lumber Company as its president, general manager and director, in that, at a time when he owed allegiance to Jefferson Lumber Company he conducted a competitive business of such nature as to cripple or injure the business of Jefferson Lumber Company, and that when such a situation exists equity will impress a trust for the benefit of the corporation on the profits arising from it and on such competitive business itself to secure those profits. There is no doubt of the existence of the principle contended for by complainants to that extent. 19 C.J.S., Corporations, § 785, page 160; Pioneer Oil & Gas Co. v. Anderson, 168 Miss. 344, 151 So. 161; Memphis & Charleston R. R. Co. v. Woods, 88 Ala. 630, 7 So. 108, 7 L.R.A. 605; O'Conner Mining & Mfg. Co. v. Coosa Furnace Co., 95 Ala. 614, 10 So. 290; Wendt v. Fischer, 243 N.Y. 439, 154 N.E. 303; Guth v. Loft, Inc., 23 Del.Ch. 255, 5 A.2d 503; Red Top Cab Co. v. Hanchett, D.C.Cal., 48 F.2d 236. The cases are innumerable and cited in 19 C.J.S., supra, and in the supplement.

The principle is sometimes thus defined by the authorities: "A trust is raised by the doctrine of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such relation, and, in most cases, contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal declaration of the trust. They arise when the property thus obtained is held in hostility to the beneficial rights of ownership." This is what the authorities term a constructive trust. 3 Pomeroy on Equity, section 1044; Mizamore v. Berglin, 197 Ala. 111, 72 So. 347, L.R.A.1916F, 1024; Fowler v. Fowler, 205 Ala. 514(4), 88 So. 648; Connelly v. Special Road & Bridge District No. 5, 99 Fla. 456, 126 So. 794, 71 A.L.R. 923; 65 Corpus Juris 454, et seq. Compare, Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74.

The corporation was dissolved on June 30, 1946 upon action taken by complainants as the sole beneficial stockholders. And the claim set up in this suit was therefore derived by complainants from the corporation when it was dissolved, In re Welch's Estate, 243 Ala. 337, 10 So.2d 5, and passed on to them. Section 110, Title 10, Code. Therefore they may enforce such rights as the corporation had. But not until the expiration of five years after the dissolution of the corporation.

During the period when it is claimed the wrongful conduct of McKinstry occurred, he was the president, general manager and director of the corporation and the complainants were the only real stockholders. If complainants had no knowledge or notice of such improper conduct as the bill alleges, the corporation as such had none. There was no one else to receive notice, since the corporation was not chargeable with knowing what McKinstry was doing for his own personal benefit in derogation of his duty by reason of holding the main offices and, in fact, being the *alter ego* of the corporation. Frenkel v. Hudson, 82 Ala. 158, 2 So. 758; Upchurch v. Goodroe, 242 Ala. 395, 6 So.2d 869.

The bill was filed after the expiration of five years following the dissolution of the corporation, and soon after complainants were informed of the conduct complained of, according to the allegations. Within the five year period the suit must be brought in the name of the corporation. Section 110, Title 10, Code. Complainants show by allegations in the bill that the business of Alabama Pine Company, conducted by McKinstry as set out above, was so related to that of Jefferson Lumber Company, of which McKinstry was the president, general manager and a director, as to be in derogation of his duty to Jefferson Lumber Company on the principle above referred to; and in so doing McKinstry was violating a confidential relationship. The facts alleged are sufficient to show that relationship and the breach of duty in respect to it, thereby making the profits of the business of Alabama Pine Company, conducted before the dissolution of Jefferson Lumber Company, to be held by Alabama Pine Company for the use and benefit of Jefferson Lumber Company on the principle of a constructive trust, which

equity will declare and enforce, as previously stated.

The bill does not sufficiently show that complainants are entitled to the profits of Alabama Pine Company arising from its conduct after the dissolution of Jefferson Lumber Company. But the demurrer is not so addressed as to present that question.

■ Although T. S. McKinstry's partners in Alabama Pine Company may have been ignorant of his alleged wrongful and duplicitous conduct, necessary to fasten a trust upon the property of the partnership, that would not be sufficient to defeat the trust on such property. As to the claim of a personal liability by them to complainants we observe that the demurrer is not so addressed as to present the sufficiency of the bill in that respect.

■ Moreover, when a bill contains a proper prayer, it is not made subject to demurrer because there is a prayer for some unwarranted relief. Endsley v. Darring, 249 Ala. 381, 31 So.2d 317; Wilks v. Wilks, 176 Ala. 151, 57 So. 776.

We will not now inquire if there is a detail of facts alleged to make the bill sufficient as respects liability of the partners in Alabama Pine Company to a personal judgment. Properly interpreted the demurrer is only addressed to the bill as a whole and to the aspect seeking a discovery. The indication is that a discovery is sought in order to supply those details. We will now treat that aspect of the bill.

The amendment to the original bill filed July 25, 1952 seeks a discovery. It alleges that complainants "desire by said discovery to trace the funds obtained from said Thomas S. McKinstry, Jessie D. McKinstry, Jerome D. McKinstry and W. D. McKinstry and the real and personal property now held by them and that they have no means of doing so and are unable to do so save and except by a discovery from the respondents." The prayer in that respect is as follows:

"To the end that complainants may have the discovery that they are entitled to complainants pray that this court will order, adjuge and decree that the respondents, Thomas S. McKinstry, Jessie D. McKinstry, Jerome D. McKinstry and W. D. McKinstry each be required to answer interrogatories numbered one (1) through /* (sic) inclusive, hereto attached, marked Exhibit 'A' and made a part of this bill of complaint and complainants aver that the facts and information sought to be established by the answers to the interrogatories attached to this bill are material and are indispensible to complainants in the prosecution of this their suit and are within the knowledge of the said respondents and that complainants cannot make proof of the facts alleged in said bill as to which discovery is sought in any other way than by respondents' answers."

The interrogatories, exhibit "A" there referred to, were attached to the amendment and are numbered consecutively as required by Equity Rule 11, Code 1940, Tit. 7 Appendix.

■ It is contended that a bill amended so as to seek a discovery should be sworn to under Equity Rule 12, which provides that a bill need not be sworn to unless it seeks preliminary or interlocutory relief or unless it is a bill of discovery. A bill which seeks a discovery in such way as to require it to be verified is subject to demurrer for a failure to do so, Cleveland Storage Co. v. Guardian Trust Co., 222 Ala. 210, 131 So. 634, but it has been uniformly held by this Court not to be subject to demurrer for a failure to verify it to the extent that it seeks an injunction, although a temporary injunction will not be ordered unless it is sworn to. Nolen v. Wiley, 246 Ala. 482, 21 So.2d 322; Campbell v. State, 242 Ala. 215, 5 So.2d 466.

■ Under the Code of 1923 the interrogating feature of the bill was controlled by Rule 13 of Chancery Court Practice which was not brought forward in that form into the new equity rules as they appear in the Code of 1940. The new Equity Rule 12, which does not abolish the requirement for an oath to a bill of discovery, must be understood as referring

to what has theretofore been declared as to the nature of a bill of discovery. In the case of Cleveland Storage Co. v. Guardian Trust Co., supra, the distinction is drawn from the authorities between a discovery sought in aid of a purely legal demand and one which is sought in aid of a claim which has equitable standing without a discovery. When discovery is necessary to give equity to the bill, it must show that complainant does not know some of the facts essential to support an action at law and has no legal means of ascertaining or proving them except by an answer of respondent, and cannot be otherwise proven, and it must be sworn to. But when a bill otherwise has equity and the discovery is sought merely as auxiliary to it, the bill need not be verified by affidavit nor contain the allegations to which we have referred as applicable when the discovery of facts is sought to aid an action at law. So that, when Rule 12, supra, refers to the oath to a bill of discovery we interpret it to mean a bill which has no other basis for equitable standing except one for a discovery.

 Since the bill in the instant case does set up a claim of equitable standing without a discovery, it is not necessary for it to be verified by affidavit nor to contain the special allegations referred to. And while it is usual for the interrogatories to be set out in the body of a bill seeking a discovery, we know of no reason why that is a hard and fast rule so that they may not be attached as an exhibit to the bill when reference is made in its body as being a part of it.

 Appellants also insist upon laches. This being an appeal from a decree overruling a demurrer to the bill, the question as to laches is whether the bill affirmatively shows that it is subject to that claim. Gayle v. Pennington, 185 Ala. 53, 64 So. 572. Ignorance by complainants of their rights, and the existence of confidential relations qualify the consequences of what might otherwise be laches. Fowler v. Alabama Iron & Steel Co., 164 Ala. 414, 51 So. 393. Laches is founded upon acquiescence in the assertion of an adverse right for an unreasonable period of delay on the part of one who would assert it to the prejudice of the adverse party, and does not operate against a complainant on the averments of his bill which show that he had no previous knowledge of such right now sought to be enforced. Haney v. Legg, 129 Ala. 619, 30 So. 34. The principle on which laches depends has been reasserted and applied in many of our cases. Some of the later ones are: Meeks v. Meeks, 245 Ala. 559, 18 So.2d 260; Pittman v. Pittman, 247 Ala. 458, 25 So. 2d 26. See, 8 Alabama Digest, Equity, ⊙═73 and 84, and pocket part.

The foregoing opinion was prepared by FOSTER, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and adopted by the Court as its opinion.

For the reasons which we have here stated, we think the decree of the trial court overruling the demurrer to the bill should be affirmed. Respondents in the trial court are allowed twenty days in which to answer the bill.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.