319 So.2d 237 (1975)
AMERICAN EMPIRE LIFE INSURANCE COMPANY
v.
J.D. McADORY, Sheriff, et al.
No. 48305.
Supreme Court of Mississippi.
September 22, 1975.
*238 Young, Young & Scanlon, Jackson, for appellant.
Richard E. Stratton, III, Brookhaven, for appellees.
Before GILLESPIE, SMITH and ROBERTSON, JJ.
SMITH, Justice.
In this case appellant, American Empire Life Insurance Company, a corporation, as owner of a commercial lot worth some 55 to 60 thousand dollars, sought to enjoin its sale in execution of an enrolled judgment for $55,563.42 which had been recovered by Deposit Guaranty National Bank against its grantor, Empire Investment Company, W.L. Dickerson, appellee, claiming to be owner of the judgment by assignment.
The background facts are complicated.
The actors in the transactions which preceded and gave rise to the present suit, in addition to Life Insurance Company, were W.L. Dickerson, the appellee, A.D. Buffington and one Blackmon, and two corporations, Empire Investment Company and B & B Inc.
In the trial before the chancellor, at the conclusion of complainant's case, on motion of appellee, the chancellor excluded the evidence and entered a decree dissolving the temporary injunction which had issued and dismissing the suit.
Griffith, Mississippi Chancery Practice section 584 (2d ed. 1950), states the circumstances under which such an action is proper.
Under this statute the court has held that when at the conclusion of complainant's evidence the defendant moves to exclude it and to dismiss the bill the court should assume as true all facts which the complainant's evidence fairly tended to establish together with all reasonable inferences to be deduced therefrom, the practice in that respect in the chancery court being analogous to that in the circuit court.
The correctness of the chancellor's action in this case is vigorously challenged and must be examined in the light of the above standard.
Dickerson, appellee, and Empire Investment Company were defendants in the trial court, in addition to the sheriff who was conducting the execution sale. However, Life Insurance Company moved to amend so as to make defendants A.D. Buffington and Ralph Blackmon, alleging that they had been co-adventurers, with Dickerson, and to have acted in concert with him in his wrongful acquisition of the judgment.
Buffington had formed American Empire Life Insurance Company in 1967, and at relevant times he was president, director and executive committee member. He was also president, director and "in control" of Empire Investment Company. He was incorporator, vice-president, director and owner of all of the stock in B & B Inc., his personal holding company. He was also president of another corporation which may be referred to as "IBIDCO."
Empire Investment Company, while having no formal connection with Life Insurance *239 Company, had some directors in common with it and it was operated by Buffington from Life Insurance Company's offices. Dickerson, the appellee, was, from April, 1971 until October 26, 1971 de facto director, management committee member and assistant to the president (Buffington) of Life Insurance Company, having been elected as shown by company minutes, and having acted as such during the period stated, although at the conclusion of this period his election was adjudged to have been illegal and was invalidated by an order of the chancery court in another case.
The basic question posed by the present appeal is whether the evidence offered, direct and circumstantial, which supported or reasonably tended to support Life Insurance Company's contentions, together with all such reasonable inferences which might be drawn from it which tended to support such contentions, and considered in the context of the relationships and fiduciary duties of Dickerson and his fellow actors, as officers of the several corporations, was incapable of supporting a decree for Life Insurance Company?
In deciding whether such evidence was sufficient to withstand the motion to exclude it is not intended to foreshadow here what the ultimate decision following a full trial of the case should be. However, evidence introduced (and that offered and erroneously excluded) measured by the rule stated in Griffith and quoted above, sufficiently supported appellant's contentions to require appellees to go forward with such defenses as they may have and the action of the chancellor in sustaining the motion to exclude and entering a decree for appellees was error. See Mississippi Code Annotated section 11-5-71 (1972).
Deposit Guaranty National Bank had obtained the judgment in question against Empire Investment Company in the amount of $55,563.42, and this became a lien upon the property here involved which then belonged to the Investment Company. Attorneys for the Investment Company worked out a compromise settlement with Deposit Guaranty National Bank whereby the Investment Company agreed to pay and the bank agreed to accept in full satisfaction and settlement of its $55,563.42 judgment the sum of $12,000. At the time, the company did not have immediately available the $12,000 in cash and Buffington, who was chairman of Investment Company's board of directors, as well as president and director of the Life Insurance Company and was an officer and owned all of the stock of B & B Inc., proposed to the Investment Company that he would undertake to raise the $12,000 for Investment Company for the purpose of enabling that company to take advantage of the compromise offer of Deposit Guaranty National Bank and thereby settle and satisfy the judgment for the sum of $12,000. As a condition, Buffington stated that the money should be repaid by the company when it sold a certain building which it owned. The transaction was approved and authorized.
Pursuant to this, Buffington, Dickerson and Blackmon each put up $4,000 of the $12,000 loan to the Investment Company, with the understanding that they would each be repaid $6,000 within a period of from 30 to 60 days, that being the time within which it was expected that Investment Company would sell the building.
However, instead of using these funds to enable Investment Company to take advantage of its opportunity to satisfy the judgment for $12,000, as had been agreed upon, Buffington had the judgment transferred and assigned to his own personal holding company, B & B Inc.
At a meeting of the shareholders of the Life Insurance Company in April, 1971, (although later declared illegal and invalidated by a decree of the chancery court in another case), Buffington, Dickerson and Blackmon were elected to its board of directors. This board of directors then placed Buffington, Dickerson and Blackmon on a management committee and *240 elected Buffington president, Blackmon treasurer and Dickerson assistant to the president (Buffington) of Life Insurance Company. From April, 1971, until October 26, 1971, Buffington, Dickerson and Blackmon acted in these capacities and controlled the affairs of Life Insurance Company.
It was in this situation that in May, 1971, Buffington, Dickerson and Blackmon brought about the purchase by Life Insurance Company from Investment Company of the real estate in question.
This was done by having Investment Company execute and deliver to Life Insurance Company its general warranty deed conveying the property to Life Insurance Company. Although the lien of the bank's judgment had neither been satisfied nor cancelled, no exception was noted in the general warranty clause of the deed. In addition to this, Life Insurance Company was caused to pay off a mortgage indebtedness actually owed by Empire Investment Company approximating $40,935. In June, 1971, Buffington's personally owned corporation, B & B Inc., without any known consideration, assigned the judgment to appellee Dickerson.
In 1972, after disposing of his stock in Life Insurance Company, Dickerson proceeded to execute the judgment and the proposed sale of the property by the sheriff was halted by the temporary injunction issued in this case.
The lot in question is valuable commercial property located at the intersection of North Street and High Street in the City of Jackson, and worth some $55,000 to $60,000.
While it is not suggested that the whole case can be measured by the result, it is obvious that, unless restrained in these proceedings, Dickerson having acquired in this manner the bank's judgment, would stand to collect the amount of the judgment through the sale of Life Insurance Company's lot although he had paid out only $4,000 of his own funds.
Among other things, Life Insurance Company contends that Buffington and Dickerson, acting in concert and in breach of their fiduciary duty to Life Insurance Company and Investment Company, engineered and brought about the present situation, that their actions in the premises violated fiduciary duties owed by them as officers of Investment Company and Life Insurance Company and that each is bound by the acts of the other. It is contended that under the circumstances Dickerson holds the judgment as trustee under a constructive or resulting trust for the benefit of Life Insurance Company. Also, that the actions of Dickerson and Buffington violated fiduciary duties owed Life Insurance Company and Investment Company, whether they acted as de jure or de facto officers of Life Insurance Company. Moreover, Dickerson's claim that he took the assignment of the judgment as "security" for his loan of $4,000 is countered by a charge that, if so, the loan was usurious in that the lenders were to receive in repayment not only the principal but $2,000 additionally on each $4,000 of the loan, and that interest and principal both were forfeited.
It was error for the chancellor to exclude the evidence, dissolve the injunction and dismiss the suit. The chancellor unduly restricted the appellant's attempts to introduce evidence. A case of this kind, which involves the good faith of corporate officers who are charged with having converted corporate opportunities to their own personal aggrandizement, requires the application of a liberal rule as to the admission of any evidence having a tendency to draw aside or pierce the corporate veil which might otherwise conceal the real nature, purpose and circumstances of what was done.
Directors and officers of a corporation stand in a fiduciary relationship to the corporation and its stockholders. Knox Glass Bottle Company v. Underwood, 228 Miss. 699, 89 So.2d 799, 814 (1956).

*241 It is a breach of their fiduciary obligations which equity will not tolerate for such officers, in antagonism to the corporate interest, to oust the corporation from beneficial property rights which ought to be preserved to it by acquiring the property themselves. When such derelictions or breaches of duty occur, they are treated as a fraud on the corporation out of which equity will protect the corporate interest as against the unfaithful corporate officials. 3 Pom.Eq. Jur. § 959. [Pioneer Oil & Gas Co. v. Anderson, 168 Miss. 334, 344, 151 So. 161, 163 (1933)].
... [I]nterested fiduciaries have acted for and represented both the corporation and themselves in making these lease contracts. Where that occurs, it is well established that, in the absence of ratification or estoppel, and full disclosure the transaction is voidable at the option of the corporation without proof of actual fraud or actual injury to the corporation... . [Knox Glass Bottle Co. v. Underwood, 228 Miss. 699, 743, 89 So.2d 799, 815 (1956)].
......
"If a third person joins with a corporate officer in dealing with the corporation, with knowledge that he is such officer, the contract may be set aside as to him as well as the corporate officer, and cannot be enforced by either party thereto, because they are in pari delicto... ." [228 Miss. at 753, 89 So.2d at 819 (1956)].
It is argued that since the election of Dickerson, Buffington and Blackmon as corporate officers was later declared to have been illegal, that they should not be held to have owed the same duties to the corporation as if they had been lawfully elected. The illegality of their tenure, rather than being a defense, requires an even closer scrutiny of what was done than otherwise might be the case, especially where they have diverted a corporate opportunity to their own use and their actions have redounded to their own personal profit at the expense of corporate interests.
The assertion that Buffington (through B & B Inc.), and then Dickerson, took the assignment of the $55,000 judgment as security for their respective shares of the loan, $4,000 in each case, aside from the charged breach of faith in failing to apply the funds to the satisfaction of the judgment, is met by the contention that the evidence shows that the loan was usurious in that $6,000 was to be repaid to each of them within 30 to 60 days for each $4,000 loaned, so that both principal and interest are uncollectible under Mississippi Code Annotated section 75-17-1 (1972).
Upon remand, all relevant records, correspondence, minutes and other papers, and all relevant testimony, directly or indirectly reflecting or bearing upon the true nature, purpose and motive of the acts of the several parties which ultimately resulted in the acquisition of the judgment by Buffington, through B & B Inc., and later by Dickerson, and in the failure to apply the funds raised to the satisfaction of the bank's judgment should be admitted into evidence.
The request of Life Insurance Company to amend its bill of complaint so as to make defendants Buffington and Blackmon should be granted.
The case will, therefore, be remanded in order that Buffington and Blackmon may be made parties defendant and that the case may be fully heard and for such further appropriate proceedings as may be necessary, not inconsistent with this opinion.
Reversed and remanded.
RODGERS, P.J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.