376 So.2d 1328 (1979)
Ben ELLZEY, George E. Bass and J. L. Johnson, Complainants/Appellants,
v.
FYR-PRUF, INC., et al., Defendants/Appellees.
No. 51289.
Supreme Court of Mississippi.
October 31, 1979.
Rehearing Denied December 12, 1979.
*1330 Corr, Carlson & Fleming, George C. Carlson, Jr., Sardis, Freeland & Gafford, T.H. Freeland, III, Oxford, E. Clifton Hodge, Jr., University, for complainants-appellants.
McClure, May & Mitchell, Cinclair May, Sardis, for defendants-appellees.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
PATTERSON, Chief Justice, for the Court:
In the Chancery Court of the Second Judicial District of Panola County Ben Ellzey, George E. Bass, and J.L. Johnson filed what became, following amendment, a stockholders' derivative action alleging that Marlyn Yarborough, John P. Fox, James B. Lollar, and Sterling Allen, all officers and directors of Fyr-Pruf, Inc., a Mississippi corporation, had usurped business opportunities belonging to Fyr-Pruf. The court placed the burden of proving all issues by clear and convincing evidence upon the complainants and dismissed the bill with prejudice following a hearing. Because we are of the opinion the court erroneously placed the burden of proof upon complainants, we reverse and remand.
Fyr-Pruf, Inc. was incorporated on August 17, 1970, to produce padding material. The initial investors, among them Dr. George Bass, a chemist, thought a patent might be obtained on "the Bass formula," a process through which it was believed flame-retardant padding could be mass-produced. However, the "formula" proved to be unsuited to manufacturing processes, and a patent never issued. Despite this setback, the officers of Fyr-Pruf, among them appellees Yarborough, Fox, Lollar, and Allen, persisted in maintaining Fyr-Pruf as a going concern in the carpet padding trade. A lease had been obtained on a manufacturing facility in Batesville, and production began in October 1970, with output increasing until April 1971, when Fyr-Pruf lost its facility following a change in the ownership of the leased premises occurring after Fyr-Pruf unsuccessfully tendered its own bid to the Small Business Administration, lessor.
Thereafter, Fyr-Pruf officers and directors sought a new manufacturing facility and additional equipment to expand production of padding. A site located in Water *1331 Valley came to their attention as Fyr-Pruf officials sought an SBA loan to secure a lease. With the aim of obtaining the necessary equipment for Fyr-Pruf, appellant Ellzey contacted Sam Lerman, a St. Louis, Missouri businessman who owned machinery for mass-producing carpet padding.
Officers of Fyr-Pruf made several trips to discuss the purchase of this equipment from Lerman and ultimately tendered a check for $5,000 to hold it for ten days, agreeing that Fyr-Pruf would try to locate financing for the purchase of the equipment and a facility in which to continue production. Unfortunately, on June 23, 1971, Fyr-Pruf received notice from SBA of the denial of its application for a loan to acquire the Water Valley facility.
By this time, the formation of a rival corporation for the production of carpet padding, Bondafoam, Inc., had become a reality. Its charter issued on June 24, the day following the SBA's rejection notice. Sustained by the investments and managerial talents of appellees, who had not resigned from their positions as officers and directors of Fyr-Pruf, the incipient Bondafoam leased the Water Valley facility and began what proved to be a profitable padding manufactory, using equipment which appellees Yarborough, Allen, and Lollar had purchased in June 1971 from Lerman. Significantly, Yarborough, Allen and Lollar had learned of the availability of the machinery due to their representation of Fyr-Pruf in negotiations with Lerman. At the time of the purchase for Bondafoam, the equipment was essential to Fyr-Pruf's expectation of tooling up a new plant. The evidence suggests the appellees who organized Bondafoam and purchased the equipment in St. Louis did so surreptitiously, with the purpose of excluding appellants from the new venture. Appellants insist that it was not until June 1971, long after the appellees had become interested in forming Bondafoam, that they acknowledged Fyr-Pruf had become unprofitable.
The evidence concerning the financial ability of Fyr-Pruf to secure the Water Valley lease and the equipment conflicted. Assuming the March 31, 1971, audited financial statement was prepared in accord with accepted accounting principles, we must conclude that as late as that date Fyr-Pruf's assets exceeded its liabilities, making it then solvent by balance sheet standards. Appellees dispute the accuracy of the statement, however, contending that the asset carried as "RECEIVABLE FROM STOCKHOLDERS  $40,000," the debit corresponding to the $40,000 credit to the common stock account, was a sham, because Fyr-Pruf had in fact "given" the stock to appellees Fox and Yarborough. They also argue various pieces of equipment carried as assets were not in fact "owned" by Fyr-Pruf, but were possessed conditionally subject to outstanding liens.
In our opinion, the burden of showing the $40,000 accounts receivable was improperly carried as an asset rests upon the appellees. As corporate officers, they occupied fiduciary positions with Fyr-Pruf. Smith v. Mississippi Livestock Producers Ass'n, 188 So.2d 758 (Miss. 1966). As fiduciaries, they must prove by clear and convincing evidence the inherent fairness of their receiving a thing of value (40,000 shares of stock) from the corporation for anything less than full and adequate consideration, measured at the time received.
Whether legal title to the equipment controlled the extent to which it could be carried as an "asset" on Fyr-Pruf's balance sheet also presents an issue. We conclude legal title, if not immaterial, is certainly not decisive, Mississippi Code Annotated section 75-9-202 (1972), even when the transaction is cast in terms of a lease-purchase option agreement. Continental Leasing Corp. v. Lebo, 217 Pa.Super. 356, 272 A.2d 193 (1970); Nickell v. Lambrecht, 29 Mich. App. 191, 185 N.W.2d 155 (1970); and United Rental Equipment Co. v. Potts & Callahan Contracting Co., 231 Md. 552, 191 A.2d 570 (Md. App. 1963). In our opinion, the equipment represented a net asset of Fyr-Pruf to the extent its value exceeded any indebtedness secured by it. See Miss. Code Ann. § 75-9-504(2) (1972). From the abbreviated March 31 statement, we *1332 observe items, such as "N/P  EQUIPMENT,"[1] suggesting that encumbrances upon the equipment were properly reflected on the face of the balance sheet.
The court below, however, after placing the burden of proving all issues by "clear and convincing" evidence upon the complainants, stated, "That Fyr-Pruf had become insolvent by May of 1971, seems to [be] a logical conclusion of fact." This determination rested upon an erroneous application of the burden of proof as well as unsound conceptions that title to the equipment was conclusive in determining whether it was an asset and that the $40,000 in stockholder receivables should have been deleted because "[t]he stock was never paid for." For these reasons the trial court's finding concerning Fyr-Pruf's financial status must be reexamined on remand.
The questions of this appeal require us to decide what a complainant alleging usurpation by a fiduciary of a "corporate opportunity" must prove to establish a prima facie case. We must also decide the character of the required proof, the precise role of financial inability of the corporation to take advantage of the opportunity, and how the fiduciary may absolve himself of liability once the complainant has established a prima facie case.
Axiomatic in our law is the proposition that corporate officers and directors, as fiduciaries, owe to their corporation the duty to exercise the utmost good faith and loyalty. American Empire Life Ins. Co. v. McAdory, 319 So.2d 237 (Miss. 1975); Cooper v. Mississippi Land Co., 220 So.2d 302 (Miss. 1969). Fiduciaries, as Justice Cardozo put it, must be "held to something stricter than the morals of the market place," Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928).
In its sweep, Knox Glass Bottle Co. v. Underwood, 228 Miss. 699, 89 So.2d 799 (1956), holds that once a conflict of interest has been shown to exist between the pursuits of a corporation and its fiduciary the burden rests upon the fiduciary to establish ratification upon full and continuing disclosure of material facts, inherent fairness, or other circumstances tending to show discharge by the fiduciary of his duty to the corporation. Specifically, Knox holds that "self-dealing," i.e., a situation in which the corporation and its fiduciary bargain on opposite sides (lessor/lessee, seller/buyer, etc.) of the transaction forming the basis of the suit, automatically raises a presumptive conflict of interest, thus shifting the burden to the fiduciary to justify his conduct.
Presently, we reaffirm Knox. Nevertheless, our inquiry cannot stop, because the appellants' case did not rest solely upon an allegation of self-dealing, but included an essential allegation of seizure by appellees of a business opportunity.[2] We think under these circumstances a prima facie case of conflict of interest with a consequent shifting of the burden of proof to the fiduciary does not arise automatically, as it does in a case of self-dealing; but it does arise when the complainant shows by a preponderance of the evidence that the business opportunity is also a corporate opportunity in view of all the facts and circumstances surrounding the transaction.
In Miller v. Miller, 301 Minn. 207, 222 N.W.2d 71 (1974), the Court established an eclectic test for determining whether a business opportunity is a corporate one. It follows, in part:
The threshold question to be answered is whether a business opportunity *1333 presented is also a "corporate" opportunity, i.e., whether the business opportunity is of sufficient importance and is so closely related to the existing or prospective activity of the corporation as to warrant judicial sanctions against its personal acquisition by a managing officer or director of the corporation. This question, necessarily one of fact, can best be resolved, we believe, by resort to a flexible application of the "line of business" test set forth in Guth v. Loft, Inc. [23 Del. Ch. 255, 5 A.2d 503], supra. The inquiry of the factfinder should be directed to all facts and circumstances relevant to the question, the most significant being: Whether the business opportunity presented is one in which the complaining corporation has an interest or an expectancy growing out of an existing contractual right; the relationship of the opportunity to the corporation's business purposes and current activities  whether essential, necessary, or merely desirable to its reasonable needs and aspirations ; whether, within or without its corporate powers, the opportunity embraces areas adaptable to its business and into which the corporation might easily, naturally, or logically expand; the competitive nature of the opportunity  whether prospectively harmful or unfair ; whether the corporation, by reason of insolvency or lack of resources, has the financial ability to acquire the opportunity; and whether the opportunity includes activities as to which the corporation has fundamental knowledge, practical experience, facilities, equipment, personnel, and the ability to pursue. The fact that the opportunity is not within the scope of the corporation's powers, while a factor to be considered, should not be determinative, especially where the corporate fiduciary dominates the board of directors or is the majority shareholder.
If the facts are undisputed that the business opportunity presented bears no logical or reasonable relation to the existing or prospective business activities of the corporation or that it lacks either the financial or fundamental practical or technical ability to pursue it, then such opportunity would have to be found to be noncorporate as a matter of law. If the facts are disputed or reasonable minds functioning judicially could disagree as to whether the opportunity is closely associated with the existing or prospective activities of the corporation or its financial or technical ability to pursue it, the question is one of fact with the burden of proof resting upon the party attacking the acquisition. (222 N.W.2d at 81)
In the second paragraph above, the Minnesota Court seems to lay down a two-portion test for determining whether a complainant has made out a prima facie case of conflict of interest arising from the fact that the business opportunity in question is a corporate opportunity. The first asks whether the complainant has shown the business opportunity to be reasonably related to the existing or prospective business activities of the corporation. The second asks whether the plaintiff has shown the financial ability of the corporation to seize the opportunity. The first represents a compendium of the factors listed in the first paragraph quoted, other than financial ability. The second takes up the remaining factor, financial ability, apparently making it an essential element of a prima facie case showing a business opportunity to be a corporate one. See A.C. Petters Co. v. St. Cloud Enterprises, Inc., 301 Minn. 261, 222 N.W.2d 83 (1974); but see Morad v. Coupounas, 361 So.2d 6 (Ala. 1978).
We are satisfied the first is an essential element of a complainant's prima facie case: A fiduciary cannot be faulted for the mere fact that he has invested in a business which bears only a remote relation to the operations of his corporation. The complainant seeking to impose a trust upon the fruits of the investment of its fiduciary must show some practical relationship between the investment and the corporation's business aspirations.
We find the second a more trouble-some requisite. In relegating financial inability to a position of little importance, if *1334 any, the Second Circuit in Irving Trust Co. v. Deutsch, 73 F.2d 121 (1934), observed that the corporation's financial inability in that case rested largely upon the failure of one of the defendants to pay a debt to the corporation, a circumstance arguably present under the facts of the case now before us. We think Irving too extreme in holding that regardless of the financial inability of a solvent corporation the fiduciary must refrain from taking advantage of an available business opportunity. On the other hand, we agree that a complainant's case should not be deemed deficient by reason of the corporation's financial inability if the fiduciary is unable to rebut complainant's evidence that such inability resulted either from the fiduciary's failure to pay a debt owing to the corporation or from his failure to exert his best efforts to prevent or cure the inability.
A corporation may be insolvent in the balance sheet sense, temporarily insolvent in the equity sense, solvent but unable to obtain credit for lack of liquidity, etc. The degrees of "inability" are of utmost importance in business opportunity cases, because it may be that investors would look more favorably upon even a fledgling corporation if its fiduciaries had developed the business opportunity as one belonging to the corporation, rather than diverted their attentions and efforts to personal gains divorced from the welfare of the corporation to which their allegiance was wedded as a matter of law.[3]
A number of cases treat unquestioned financial inability as conclusive against a finding that a business opportunity is also a corporate one, assuming the insolvency arose despite discharge by the defendant fiduciaries of their strict duties of fidelity and diligence. See Durfee v. Durfee & Canning, Inc., 323 Mass. 187, 80 N.E.2d 522, 530 (1948); Electronic Development Co. v. Robson, 148 Neb. 526, 28 N.W.2d 130, 138 (1947); Jasper v. Appalachian Gas Co., 152 Ky. 68, 79, 153 S.W. 50 (1913); Hannerty v. Standard Theater Co., 109 Mo. 297, 19 S.W. 82 (1892). We accept this proposition.
However, we reject the present application of Tovrea Land & Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47, 57 (1966), upon which the chancellor relied:
It is well established that directors or officers may engage in a business similar or identical to that carried on by a corporation in which they are directors or officers, either on their own behalf or for another corporation of which they are directors or officers... . Good faith will insulate the directors or officers from liability unless the rival business is actually and demonstrably detrimental to the corporation... .
This passage represents the other extreme of an unqualified holding that financial inability falling short of balance sheet insolvency is irrelevant, and appears equally unacceptable. As Lattin states, "[i]t is difficult to imagine how directors may enter into an `independent business,' at least as owners and managers of the business, after acceptance of their membership on the board and during their service as directors, in competition with their corporation without acting in bad faith." Lattin, The Law of Corporations, § 79, p. 287 (2d Ed. 1971), citing Foley v. D'Agostino, 21 A.D.2d 60, 248 N.Y.S.2d 121, 129-30 (1964). This is one reason why it has been held that even rejection of an opportunity by the corporation will not necessarily protect a competing officer or director. See Paulman v. Kritzer, 74 Ill. App.2d 284, 219 N.E.2d 541, 543-44 (1966), aff'd., 38 Ill.2d 101, 230 N.E.2d 262 (1967).
The notion of a "business competition doctrine" probably led the chancellor into error in holding that the complainants had the burden of proving all issues by clear and convincing evidence. We reject this notion, because it is at odds with constitutional policy. See Mississippi Constitution, Article 7, section 194 (1890):

*1335 No person who is engaged or interested in a competing business, either individually or as employee or stockholder, shall serve on any board of directors of any corporation without the consent of a majority in interest of the stockholders thereof.
It has been said that fiduciaries always have the burden of proving the fairness of their dealings with trust property. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Perlman v. Feldmann, 219 F.2d 173 (2d Cir.1955). We agree with this statement. However, it assumes that trust property has been dealt with, an assumption which cannot readily be made on the foundation of the voluminous record in this case in the absence of a guided factual analysis. In supplying that guidance, we fashion our median position first by accepting the first portion of the Miller test for determining whether a prima facie showing of trust property in the form of a corporate opportunity has been made. But we cannot wholly accept the Miller Court's formulation of the second portion of the complainant's initial burden, a showing the financial ability of the corporation to seize the business opportunity in question: While financial ability is not irrelevant, in our opinion, it is certainly not determinative, nor is it invariably an essential element of complainant's prima facie case of usurpation of a corporate opportunity. See gen. Feuer, Personal Liabilities of Corporate Officers and Directors, 85-86 (2nd Ed. 1974).
We think the proper solution presented by this and other business opportunity cases is as follows: A complainant seeking to impose a constructive trust upon a corporate fiduciary must bear the initial burden of establishing a prima facie case of a conflict of interest. See American Investment Co. v. Lichtenstein, 134 F. Supp. 857 (ED Mo. 1955); Colorado & Utah Coal Co. v. Harris, 97 Colo. 309, 49 P.2d 429 (1935); Greer v. Stannard, 85 Mont. 78, 277 P. 622 (1929); Tierney v. United Pocahontas Coal Co., 85 W. Va. 545, 102 S.E. 249 (1920). As stated in Knox, supra, this may be done by showing "self-dealing," in which case the burden shifts to the fiduciary to absolve himself of liability by showing a ratification by disinterested board members, inherent fairness, or the like.
Where usurpation of a corporate opportunity as opposed to self-dealing is alleged in the bill, a more complex showing will be required to sustain the complainant's initial burden of proof. First, it must be shown by a preponderance of the evidence that under all the facts and circumstances the business opportunity is logically related to the corporation's existing or prospective activities. Second, the complainant must prove that the corporation was either (a) not insolvent in the balance sheet sense at the relevant times, or (b) financially disabled as a result of nonpayment of a debt or breach of a fiduciary duty by one or more of the defendants. This second element of the complainant's case has been met, in our opinion, by the appellants.
Once the complainant satisfies these two elements by proof, the business opportunity may be regarded as a corporate one and the burden of proof shifts to the fiduciary to absolve himself of liability in accordance with the principle stated in Knox. Good faith alone, even in the absence of harm to the corporation, will not suffice to absolve the fiduciaries of liability: it must be clear that the duty of fidelity and diligence, as well as the duty of continuing disclosure of material facts, has been fully discharged.[4] See gen. Knepper, Liability of Corporate Officers and Directors, § 3.04, n. 36 and accompanying text (3rd Ed. 1978). Finally, if the corporation was a *1336 going concern when the business opportunity was presented to the fiduciaries, they must also show that they did not compete to the economic detriment of the corporation. See Miller, supra.
We have examined Pioneer Oil & Gas Co. v. Anderson, 168 Miss. 334, 151 So. 161 (1933), in which we affirmed a finding that a corporate fiduciary had absolved himself of liability in the acquisition of a fractional leasehold interest in which the corporation allegedly had an "interest or expectancy." We consider it distinguishable, because the evidence in it showed the corporation's aspirations did not embrace acquisition of fractional interests. This and other facts would support a finding that the Pioneer business opportunity was not corporate under the test set forth in this opinion. For this reason, we are not constrained by the dicta in Pioneer concerning the role of the corporation's financial inability or of the fiduciary's good faith.[5]
In conclusion, we reverse and remand for resolution of whether the appellees have discharged their burden of absolving themselves of liability in the manner we indicated.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
COFER, J., takes no part.
NOTES
[1] This item, "note payable," reflects a loan obligation secured by the equipment.
[2] This case does present some self-dealing aspects. During the production stages of Fyr-Pruf, appellee Yarborough organized Misten Sales for the purpose of selling raw material to Fyr-Pruf at 1¢ per pound profit. The chancellor specifically found, without manifest error, we think, that the transactions between Fyr-Pruf and Misten were mutually advantageous, and ratified by Fyr-Pruf upon full disclosures of material facts. We think, therefore, that appellee Yarborough bore his burden of absolving himself of liability with respect to the Misten dealings and that this particular finding must now become part of the law of this case on remand.
[3] "The very existence of a prospective profit-making venture may generate additional financial backing and may convince creditors to be less importunate in their demands." Note, Corporate Opportunity, 74 Harv.L.Rev. 765, 772-73 (1961).
[4] It should be noted that the duty of diligence does not require of the fiduciary expenditures of personal funds for the benefit of his corporation, Urban J. Alexander Co. v. Trinkle, 311 Ky. 635, 224 S.W.2d 923 (1949); Hart v. Bell, 222 Minn. 69, 23 N.W.2d 375 (1946); however, diligence does require that any solicitation of working capital from other prospective investors be made exclusively in behalf of the corporation, rather than in behalf of some enterprise unrelated to the fiduciary's agency. See Electronic Development Co. v. Robson, 148 Neb. 526, 28 N.W.2d 130 (1927).
[5] We note apparent inconsistencies between language in Pioneer intimating the significance of good faith and the general principles laid down in Knox Glass Bottle Co. v. Underwood, 228 Miss. 699, 89 So.2d 799 (1956).